THE PEOPLE OF THE STATE OF NEW YORK ex rel. LUCY ALLEN, RESPONDENT, v. WILLIAM H. ALLEN, APPELLANT.

*Judgment in an action for divorce rendered in another State — conclusive on the parties in the courts of this State — how far binding upon the children.*

Upon the return to a writ of *habeas corpus* issued upon the application of the relator to compel her former husband, the respondent, to produce their children in court, together with his reasons for their detention, it appeared that on October 10, 1884, the relator began an action against her husband for an

absolute divorce in the county of Tazewell State of Illinois, in which county the parties then resided; that the defendant was personally served with process, appeared by an attorney and put in an answer; that at the November term of the court the husband was adjudged to be in contempt for a failure to comply with an order requiring him to pay alimony and also for taking and removing and keeping the children out of the State in violation of the terms and provisions of that order; that thereafter the case came on for trial, and evidence on the part of the complainant having been received, and evidence offered on behalf of the defendant having been excluded on the ground that he was in contempt, a verdict was rendered in favor of the plaintiff, upon which a judgment was entered dissolving the marriage, finding that the complainant was wholly competent and qualified to have the care, custody and control of the children, and that the defendant was wholly unfit to have such care, custody and control, and adjudging that .he complainant have the care, custody, control and education of all the said children. The defendant having removed the children to this State the relator applied for this writ.

*Held*, that as between the husband and wife the question as to the fitness and competency of the one, and the unfitness and incompetency of the other, to have the care and control of the children, was conclusively established by the judgment of the court of Illinois and could not be again examined in the courts of this State.

*In the Matter of Frank B. Bort* (25 Kansas, 308) not followed.

That the decision was binding upon the children only for the time being, and that as soon as the circumstances of the custodian changed, or other circumstances arose which would make it for the best interests of the children that there should be a change, it would be the duty of the court in which the decree was originally made, or of any other court having jurisdiction, to make such change.

That, upon the facts shown to exist in this case, the report of the referee awarding the custody and control of the children to the mother should be affirmed.

Appeal from an order of the Monroe Special Term, awarding the custody of Mary Allen, Thomas Allen and John Allen, infant children of Lucy Allen and William H. Allen, to their mother Lucy Allen.

*J. A. Stull*, for the appellant.

*John M. Davy*, for the respondent.

Haight, J. :

The relator is the mother of the children in question. Upon her petition a writ of *habeas corpus* was issued commanding William H. Allen, their father, to produce the children in court together with his reasons for their detention. Upon the return made by

him a reference was ordered to a referee to take such testimony as·
might be material to the issues raised, and to report the same, with
his opinion thereon, to the court with all convenient speed. This
appeal was taken from the order of the Special Term confirming
such report. The referee found, as facts, that the relator and defend-
ant were married at Pekin, in the State of Illinois, on or about the
29th day of July, 1874; that they thereafter resided together as
husband and wife at that place until August, 1884, at which time
they separated; that the relator Mary Allen, aged nine years· on
the 20th day of June, 1885; Thomas Allen, aged seven on the 25th·
day of September, 1884, and John Allen, aged six years on the
10th day of February, 1885, were the issue of such marriage; that
on the 10th day of October, 1884, Lucy Allen began an action
against William H. Allen for an absolute divorce in the Supreme
Court of Tazewell county, Illinois, which was the county where
the parties resided; that the defendant was personally served in the
action with process, appeared by an attorney and put in an answer;
that on the 11th day of October, 1884, there was issued out of that
court in the action, an injunction whereby William H. Allen, his
attorneys, solicitors, agents and servants were commanded to abso-
lutely *desist and refrain from taking or removing any of his money
or property out of the State of Illinois, and from keeping or hav-
ing the children kept out of the State* until the further order of
the court in the premises; that the court also, upon motion duly
made, made an order directing the defendant to pay the com-
plainant the sum of $100 alimony *pendente lite,* on or before
the opening of the court on Thursday, the 14th day of Novem-
ber, 1884; that at the November term of said court, upon
a motion made requiring the defendant to show cause why
he had not complied with the order of the court requiring
him to pay the alimony, it was ordered and decreed that the
said William H. Allen stand and be in contempt of court for
non-compliance with the said order; and it was further ordered that
a warrant issue against him, and that he be arrested and· brought
before the court to show cause why he has neglected to comply with
the order, etc.; that on the 25th day of November, 1884, the case
came on for trial, and that the complainant with her counsel were
present in person; the defendant appeared by his attorney, but did

not appear in person; that a jury was impanneled and sworn, and the evidence on behalf of the complainant was taken; that the counsel for the defendant requested that he be permitted to cross-examine the witnesses of the complainant, and that he be permitted to introduce evidence on behalf of the defendant which the court refused to permit, on the ground that the defendant was in contempt for refusing to comply with the order of the court; that at the close of the evidence the case was given to the jury, which retired for deliberation and afterwards returned into court with their verdict in which they found the defendant guilty of the charges made in the complaint, and thereafter a judgment and decree was duly made by the court, reciting that it had heard the oral testimony and arguments of counsel both in relation to the subject of alimony and the custody of the children named in the bill, together with the competency and qualifications of the defendant as well as the complainant to have the custody, education and control of the children, and finding that all the material facts alleged in the bill are true, as therein set forth; adjudged, that William H. Allen is a person wholly unfit to have the care, control, custody and education of the children, and that the complainant is wholly competent and qualified to have the care, custody, control and education of them, and that the marriage be dissolved and the parties each freed from the obligations thereof, and that the complainant have the care, custody, control and education of all of the said children. That the complainant in her bill of complaint in that action alleged that the defendant is not a proper and suitable person to have the custody of the children, or to keep them in his hands, and that she was. The answer admitted the marriage and births as alleged in the complaint, and alleged that the complainant was not a fit and proper person to have the care and custody of the children, and that he was. The referee further found as facts, that when the relator and defendant separated, the defendant retained the care and custody of the children with the consent of the relator upon the understanding that he would not remove them from Pekin without his giving her notice of his intention so to do, and an opportunity to visit them before their departure; that on the 16th day of September, 1884, the defendant, by the hands of a messenger, sent to the relator a note in the following words: "I am about to take the children

east for a visit." That the note was dispatched about two hours before train time, but did not reach the relator until a few minutes before train time; that she immediately went to the house where the children had been staying, but found them gone; that the children were taken by the defendant to Rochester, N. Y., where they have since been kept by the defendant; that the defendant is a physician, and that he is now substantially without means or income except from such practice as he has been able to obtain since he came to Rochester in September, 1884; that he resides upon Elizabeth street, in the city of Rochester, with his mother, three maiden sisters and two brothers; that his mother owns the house and lot where they reside, and is about eighty-five years of age; that his sisters are dress-makers, and have substantially no property aside from their earnings; that his brother Thomas is possessed of some means, but how much does not appear; that since the children have been in Rochester they have attended church, Sunday school and public school, and that the influences surrounding the children in Rochester are wholesome. He further found as facts that the relator resides with her father in Pekin, Illinois; that her mother owns the house and lot where they live; that her father is not possessed of any considerable means; that she has a sister who resides in Chicago, Illinois, who is possessed of property in her own right, and whose husband has an income of six or seven thousand dollars a year; that they have no children, and are willing to contribute to the support of the relator and her children; that the relator has also two brothers residing in Illinois, one of whom is married, and both of whom, as well as her father and mother, are willing to aid in the support of the children; that there are good schools in Pekin; the father and mother are members of the Presbyterian church, and have been for many years, and, in the opinion of the referee, if the children are given to their mother and taken into the family of the grandfather and grandmother at Pekin they will be surrounded by wholesome influences and properly trained and educated. He further reports that in his opinion that it is for the best interests of the children that they should be given to their mother. The referee in his opinion also reaches the conclusion, that so far as the matters professed to have been decided by the judgment in the divorce action, as well as

those matters which it was necessary to decide, and so much of the pleadings and evidence as must necessarily have been considered by the court in proceeding to judgment in that action, the defendant is estopped by that judgment from calling them in question here.

The first question which we are called upon to consider upon this appeal pertains to the effect that is to be given to the judgment in the divorce action; for it is undisputed that in that action the court had jurisdiction of the parties; that an issue was raised as to the fitness of the parties to have the care, custody and control of the children, and that the court in that action adjudged that the defendant was not a proper and suitable person to have the custody of the children; that the complainant was a fit and proper person to have their custody and control, and that it would be for the best interests of the children to be given to their mother. It is contended on the part of the respondent that this judgment is conclusive upon the defendant and that he is now estopped from calling it in question, whilst on the part of the appellant it is contended that the courts of this State are not bound by this judgment, but that it is the duty of the court to now determine the proper person or persons to have the care, custody and control of the children. No claim is made that there has been any change in the circumstances of the parties, or that there has been any new facts discovered since the judgment in the divorce action.

Article 4, section 1 of the Constitution of the United States provides that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State." Under this provision of the Constitution we are required to give full faith and credit to the judicial proceedings of the courts in the State of Illinois, and if the courts of that State had jurisdiction of the parties and of the subject-matter, in the absence of fraud, its judgment is conclusive, as between the parties or their privies, on all questions litigated and decided in that court. As to those questions the judgment constitutes an estoppel. (*Dobson* v. *Pearce*, 12 N. Y., 156; *Kinnier* v. *Kinnier*, 45 id., 535; *Patrick* v. *Shaffer*, 94 id., 423–430; *Embury* v. *Conner*, 3 id., 511–5.2; *Kerr* v. *Hays*, 35 id., 331.) But it is contended that whilst the parties may be bound by the prior judgment, the infant children are not, and that it is the

duty of the court to determine the question anew, independent of the conclusion reached by the Illinois court.

In the case of *Thorndyke* v. *Rice* (24 L. Reporter, 19, 20) it was held that a decree of a tribunal as to the custody of a child was never final, but that the same tribunal, or another where the child was either temporarily or permanently staying, might consider the case upon the facts then existing, and looking at the welfare of the child should determine whether any and what change should be made in regard to its custody.

In the case of *Woodworth* v. *Spring* (4 Allen, 321) it was held that the appointment in Massachusetts of a guardian over a child whose legal domicile is in another State, who has a guardian appointed under the laws of that State, does not deprive the court of Massachusetts of the power in its discretion to decree the custodian of the child to a foreign guardian.

In the case of *Williams* v. *Williams* (13 Ind., 523) it was held that where upon granting a divorce the court, in its judgment, assigns the custody of the child to one of the parties, such disposition of the child will control till the judgment making it is modified by the court upon proper application, and cannot be disregarded in a subsequent proceeding by *habeas corpus* to obtain possession of the child.

In the case of *Wilkinson* v. *Deming* (80 Ill., 342) it was held that where the divorce had been granted for the fault of the husband, giving the custody of the children absolutely to the mother, it takes away *ipso facto* all control of the father over the children until it is restored by the action of the proper court.

In the case of *Miner* v. *Miner* (11 Ill., 43) it was held that in case of separation the father has the legal right to the custody and control of his children unless he had forfeited it by misconduct. Next to the right of the father that of the mother must be recognized, but these rights are subject to the control of the Court of Chancery, and when its aid is invoked the best interests of the children should be primarily considered. That the paramount right of the father to the children will not be recognized where a divorce has been granted for his fault or misconduct. That when the aid of the court is once invoked to provide for the guardianship of infants in case of separation of the parents such infants become

the wards of the court, and it will not permit them to be removed beyond its jurisdiction.

In the case of *Wakefield* v. *Ives* (35 Iowa, 238) it was held that where a decree of divorce of a court of general jurisdiction in any other State is regularly rendered, though on service by publication, giving the custody of a minor child to the applicant, such decree will be regarded as binding and conclusive upon the parties until reversed, modified or set aside for cause shown to the jurisdiction.

In the case of *Kline* v. *Kline* (57 Iowa, 386) it was held that a decree of divorce rendered in another State on service by publication, so far as it attempted to fix the custody of minor children who were then residents of the State of Iowa, is without jurisdiction and void.

*In the Matter of the Petition of Frank B. Bort for a Writ of Habeas Corpus* (25 Kan., 308), it was held that it was the duty of the court, whenever the possession and custody of a minor child is sought by *habeas corpus*, to make such order for their care and custody as the best interests of the children may require, and to that end it may commit them to the custody of other than a parent and this notwithstanding the fact that in a decree of divorce they were committed to the care and custody of their father or mother; that such decree may bind the parties *inter sese*, but does not conclude the court as to the best interests of the children. We have thus briefly called attention to such authorities as we have been able to find that bear upon the question under consideration.

It will be observed that in the case of *Thorndyke* v. *Rice* the decree of a tribunal as to the custody of a child was never considered final, but that the same tribunal, or any other, might consider the question upon the facts then existing, looking at the welfare of the child. This decision proceeds upon the theory that the circumstances of parties to whom the custody of children may have been awarded may change, rendering it fit and proper that the court should change the custody of the children. We do not, however, understand the court in this case to have gone to the extent of holding that it was the duty of the court to go back of the former decree and try over and determine anew the facts established by that decree.

In the case of *Woodworth* v. *Spring* the question pertained to the right of guardians, and its chief bearing upon the question under consideration lies in the fact that a judgment of another State becomes an important element in determining to whom the custody of the children should be awarded.

The cases in Indiana and Illinois, to which we have referred, appear to go to the extent of holding that a judgment once fixing the custody of children becomes binding upon the parties, so long as the judgment remains in force unmodified. And to the same effect is the case of *Wakefield* v. *Ives*. In this case it appears that Mary Wakefield Ives brought an action for divorce against her husband in the District Court of Hennepin county, Minnesota, where she then resided ; that a summons was issued against the defendant and served by publication, the defendant's residence being unknown. The service of the summons having become complete by publication, a default was entered against the defendant, and the case sent to a referee to take the testimony and report to the court; that upon the testimony so reported the court rendered a decree of divorce to the plaintiff, and awarded her the care and custody of Alice H. Ives, an infant daughter. The defendant having obtained custody of the infant in the State of Iowa, a writ of *habeas corpus* was sued out by the mother. It was held that the District Court of Minnesota, by which the decree was pronounced, being a court of general jurisdiction, was, by the statute, expressly clothed with the power to grant the divorce and make the order respecting the care and custody of the child ; that she was within the jurisdiction of the court at the time the decree was rendered ; that the decree was regularly obtained and still remains in full force and binding upon the parties to it ; that under the Constitution of the United States full faith and credit shall be given to it in the State of Iowa ; that it is binding and conclusive upon the parties until it is modified, reversed or set aside, and that the mother was entitled to the custody of the child.

In the case of *Kline* v. *Kline* a different result was reached, and that upon the ground that the children did not reside in the State in which the action of divorce was granted, which attempted by its decree to fix the custody of the children. The decision in that case, however, proceeded upon the theory that the children

being non-residents of the State the court had no jurisdiction over them and is clearly distinguishable in that regard.

In the Matter of Frank B. Bort the parents were divorced by a decree of the Circuit Court of Sauk county, Wisconsin. The decree awarded the custody of the children to the father. The mother having taken the children to Leavenworth, Kansas, to reside with her parents, the father procured a writ of habeas corpus to be issued seeking to recover the possession of the children. The petitioner invoked the decree of the court of Wisconsin and the clause of the Federal Constitution to which we have referred, but the court refused to award him the custody of the children but instead awarded them to a Mrs. Powers, a grandmother of the children. The court, in delivering its opinion, seemed to be of the impression that the Constitution referred to had reference to property rights, and that it had no application for the reason that parents had no property rights in the possession of their children, but it refused to place its decision upon that ground; on the contrary, for the purpose of the decision, it conceded as between the parents the decision of the Wisconsin court was final. The court then proceeds to state reasons why it would be for the best interests of the children to be awarded to their grandmother and not to either of the parents.

It will thus be observed that from a careful examination of the authorities, to which we have referred, there is no substantial conflict. We cannot adopt the intimation suggested in the Bort case that the Federal Constitution had reference to property interests only, and that full faith and credit was to be given to the judgment of courts of other States only in cases where the judgment affected property rights. No such limitation appears in the Constitution and we do not believe that any such was intended. If it was, then a decree of divorce dissolving the marriage contract between a husband and wife residing in the State in which the decree was issued, the parties being subject to the jurisdiction of the courts of that State, would be of no binding force or effect in either of the other States of the Union, for the reason that the decree did not pertain to property and consequently would not be entitled to full faith and credit under the Constitution. To our mind the Constitution covers the question under consideration, and it is our duty to give full faith and credit to the decree of the Illinois court. We do

not, however, regard the decree of that court as binding upon the infants, but it is binding upon the parents, the parties to the action. The infants at the time, being of such tender years as to be unable to choose for themselves as to their custodian, become the wards of the court, and it was the duty of the court to choose for them. The court, in choosing for them, was required to consider the best interests and welfare of the children. Its decision became binding upon the children only for the time being, and as soon as the circumstances of the custodian changed, or other circumstances arose which would make it for the best interests of the children that there should be a change, it would be the duty of the court, in which the decree was originally made, or of any other court having jurisdiction, to make such change. But as between the parties to the action, the parents of the children, they are bound by the matters adjudged and determined in the action, and cannot again retry the questions therein determined.

In the case under consideration, the question is narrowed to a contest between the father and the mother for the possession of the children. They are of that age that they cannot choose for themselves. The father was a party to the divorce action, duly served with summons, and had an opportunity to defend. Instead he had violated the decree of the court, was adjudged guilty of a contempt, and thereby forfeited his right to defend the action. The decree, nevertheless, is binding upon him, and had the same force and effect as if he had defended. It was adjudged upon the issues raised by the pleadings in the action that he is an unfit and improper person to have the custody and control of the children. That judgment is binding upon him, and full faith and credit must be given to it. He surreptitiously, and without the consent of the mother, removed the children from that State into this State. If the judgment of the Illinois court is not binding upon him, the judgment of this court would not be in any other State of the Union. If, therefore, he should again surreptitiously remove the children to another State, she might again be compelled to litigate the same question in any State to which he saw fit to remove them. Such a rule would be unreasonable and unjust, and we think ought not to prevail.

Upon the merits the relator's claim stands upon the testimony of herself and her sister, who has accompanied her here from Chicago.

As against them there is voluminous evidence tending to show that the appellant is an educated man, of good moral character, and a proper and fit person to have the care, custody and control of the children; that she was not a fit and proper person; that she had neglected them and allowed them to go ragged and dirty; that her father, years ago, used to be a man of wealth and standing, but that fifteen or sixteen years ago he was arrested at the instance of the government, charged with having defrauded the government in the manufacture of whisky, and had his property confiscated, and that because of that he was no longer regarded as a man of good character. The referee, however, evidently believed the testimony of the relator and her sister, and has found as a fact that she was a fit and proper person for the custody of the children; that their surroundings would be wholesome if given into the custody of their mother and removed to the house of her father. He evidently took into consideration the fact that the appellant was born and brought up in the city of Rochester; that his mother, two brothers and three sisters still reside there; that he was surrounded by his relatives and friends, and that the relator had been compelled to follow her children from the State of Illinois, where they were born and reared, and where all of her own relatives and friends resided, to the city of Rochester, among strangers, accompanied only by her sister.

We have carefully read the entire evidence appearing in the appeal book, and we have discovered no reason why we should differ with the referee in the conclusion reached by him as to the facts. We are, therefore, of the opinion that the order should be affirmed, both upon the law and the facts, with costs.

SMITH, P. J., and BRADLEY, J., concurred; BARKER, J., not sitting.

So ordered.