OF ,

# THE SUPREME COURT

OF THE

# STATE OF ILLINOIS,

DECEMBER TERM, 1849, AT SPRINGFIELD.

MARTIN B. MINER, appellant, *vs.* LAURA L. MINER, appellee.

*Appeal from Greene.*

In cases of separation the father has the legal right to the custody and control of his children, unless he has forfeited, waived or lost it, by misconduct, misfortune or some peculiar circumstances, sufficient to deprive him of it.

Next to the right of the father, that of the mother must be recognized; but these rights are subject to the control of a Court of Chancery, and when its aid is invoked, the best interests of the child should be primarily considered.

Under our statute, the paramount right of the father to the children will not be recognized, where a divorce has been granted for his fault or misconduct.

The proofs taken upon the hearing of a question for divorce, may be considered by the Court, in disposing of the children of the parties.

When the aid of the Court is once invoked to provide for the guardianship of infants, in case of separation of the parents, such infants become the wards of the Court, and it will not permit them to be removed beyond its jurisdiction, or permit either parent to alienate the affections of the infants from the other.

The appellee, complainant in the Jersey Circuit Court, at the May term, 1848, filed her bill for a divorce, on account of extreme and repeated cruelty on the part of her husband. The venue was afterwards changed to Greene county for trial, and in that Court a decree for a divorce was entered, the defendant having withdrawn all defence to a divorce, but reserving to himself "the right of contesting before the Court all her legal claims, to the custody, care and maintenance of his daughter, Charlotte H. Miner, the only surviving offspring of the marriage; and reserving, also, to himself, the right of contesting any claim which might be set up by complainant for alimony, as set forth in the bill." Subsequently to the entry of the decree for a divorce, the questions as to custody of the child and the allowing of alimony, were heard and decided, whereby the custody, care, con-

trol and raising of the child, was given to the complainant, and that she have and retain as for her alimony, certain articles of personal property, enumerating some of them, " and such other items of personal property as she has in her possession, that may have belonged to the defendant;" the Court making "no order for the payment of alimony in money," from which the defendant prayed an appeal to this Court; but the Court below, as the decree reads, in consequence of the additional expense which would have to be incurred by the plaintiff, in further litigating this cause, ordered and decreed that the defendant pay to the plaintiff $15, at the end of each month, from and after the date of the decree, until the questions involved are settled, and the child should be surrendered to the plaintiff." From all these decisions, except the one granting a decree, the defendant has appealed to this Court. The testimony adduced on the final hearing of the questions reserved, some of which was objected to, is embodied in the bill of exceptions, and the defendant insists does not authorize the decisions of the Court made therein.

By agreement of the parties, entered of record, David A. Smith, esq., was substituted for Judge Woodson in the hearing of this cause, the latter having been of counsel for one of the parties, and the decision of Mr. Smith was to be and was entered as of the April term, 1849, of said Greene Circuit Court.

It is not deemed advisable to incorporate the testimony in the statement of the case, inasmuch as it is not essential to a full understanding of the opinion.

The appellant assigned several errors :

1. That he should be entrusted with the care of the child, instead of the mother.

2. That decree for divorce ought not to have been granted, nor should respondent have been adjudged to pay the costs.

3. That alimony was improperly allowed.

4. That the decree for alimony, besides being for specific articles of property, incapable of identification, is indefinite and uncertain.

5. That the Circuit Court imposed terms and required conditions unauthorized by law, and arbitrary in their character and terms.

6. That the allowance of fifteen dollars per month was wrong, and it was error to give the appellee the custody of the child.

7. The allowance of five dollars per month to the appellee, for her support during the pendency of this suit.

8. And the issuing of the depositions, taken for the express purpose of ·divorce, in the hearing on trial for the custody of the child.

D. J. BAKER, for appellant:

1. The father has the first right to the guardianship of his children, and to their custody, care, control and raising. This right is incident to and arises out of his duty to maintain them, and, consequently, to instruct them, and his right to their servi-ces. 2d Kent's Comm., p. 193 and 195, note *b;* also, 1 Hoff., Ch. R., 497; Ahrenfeldt *vs.* Ahrenfeldt, 25 Wend. R., 64; Mer-cien *vs.* People, 3d Hill's R., 399; The People *vs.* Mercien, 2d Kent's Com., 195 and 205 and note *b* and *c.*; The King *vs.* De Manneville, 5 East; 4 Humph. Rep., 523; 18 Wendell, 637. In The People *vs.* Mercien, 3 Hill, 399, it was held as a gen-eral rule of law, that, as between husband and wife, the claim of the former to the custody of their infant children is para-mount, and will be enforced on *habeas corpus,* though the child be a daughter under five years of age. The rights of parents result from their duties. 2 Kent's Com., 193 and 203. The father has the first right to guardianship, by nature; the mother the second. 2 Kent's Com., 220, note *d.* The rights and pow-ers of a guardian are strictly local, and cannot be exercised in other states. 2 do., 227, note *b;* 2d Bland's Ch. R., 504; 2d Mylen and Craig, 31; 5 Paige's Ch. R., 596; 2 Madd. Ch., 332. The father is still bound to support after a divorce is granted. 3 Gilman's R., 435 *et seq.,* Coles *vs.* Coles; Staunton *vs.* Wilson, 3 Day R., 37. The statute of Illinois relating to the support of the children of persons divorced, confers on the Court no new authority. A Court of Chancery possessed it independent of the statute. Do., 438.

2. The facts proved in this case did not authorize the alimony of the specific articles of property mentioned in the decree, much less of property by the designation of " such other items of personal property as she has in her possession, that may have belonged to the defendant." Besides being unauthorized by

the evidence and the law, a part of the articles decreed to her as alimony are uncertain, and incapable of identification. The depositions used on the trial of the divorce were improperly admitted as evidence, in regard to the questions as to the custody of the child, and the allowance of alimony. Reavis *vs.* Reavis, 1 Scam., 242.

3. The Court did not possess the authority to compel the defendant to pay for the support and maintenance of complainant, during the pendency of the suit.

4. The defendant possessed the absolute and unqualified right to appeal from the decision of the Court below to this Court; and the terms and conditions imposed upon the defendant on allowing the appeal prayed to this Court, being the payment of $15, at the end of each month from and after the date of the decree, until the questions involved should be settled, and the surrender of the child to the complainant were unauthorized and arbitrary. Emerson *vs.* Clark, 2 Scam., 489.

Wm. Thomas, for appellee:

In this case the Circuit Court decreed:

1. That the appellee should have the custody, care and control of her infant child, or female aged seven years.

2. That the appellee have and retain, as and for her alimony in the premises, certain articles of personal property, then in her possession.

3. The Court being satisfied that the value of appellant's property did not exceed the amount of his indebtedness, and that he was not in the receipt of any income, made no order for the payment of alimony in money.

4. That appellant should pay the costs.

5. That appellant should pay fifteen dollars per month for support &c., pending the litigation.

From this decree the appeal is taken to this Court. The defendant insists:

1. That, in so far as the decree affects the custody of the child, it was made in the exercise of a discretionary power, and therefore not the subject of revision by this Court. Revised Statutes, 197, secs. 6 and 8; 2 Kane, 181; 10 Wendell, 39; 12 Johnson, 49; 18 Wendell, 329–30; 6 Peters, 648; 1 Scammon, 135; 2 Bibb, 554; 5 Gilman, 169.

2. The jurisdiction of this Court is appellate only, and can only be exercised in cases " wherein the rules of law, or principles of equity, appear from the files, records or exhibits [of inferior Courts] to have been erroneously adjudged and determined." 5 art., 5 sec., Constitution; Revised Statutes, 143. The question decided by the Circuit Court depended, not upon any rule of law, or principle of equity, but upon the opinion of the Judge, as to what was for the interest of a third person, not before the Court.

3. This Court will not look into the decree for divorce, because the decision upon that question is not objected to, nor appealed from.

4. It is stated in the abstract, that the appellant withdrew all defence to the decree for the divorce; and this fact is said to appear from the record. Upon this question there can be no controversy in this Court; but the reply to the suggestion is, first, the paper referred to is no part of the record; second, it was never acted upon by the Court below, and could not have influenced the decision of that Court.

5. If such a paper had been brought to the notice of the Court, with any evidence of agreement or collusion between the parties, the bill would have been dismissed.

6. The depositions prove such conduct toward the wife, as to satisfy any Judge or Court that the guilty party is wholly unfit to have the care of an infant daughter.

7. Upon the question as to the custody of the child, the evidence shows: First, that McNeal, the father of the appellee, is a man of great wealth; that he is willing and anxious for the return of the appellee with the child, to him, and to educate and provide for the grand-child. Second, that the appellee is well qualified to have the charge and education of the child. Third, that the welfare of this child requires the care and attention of the mother. Fourth, that appellant is destitute of property, and, of course, without the ability to educate the child so as to fit her for the duties of life. Fifth, that appellant has employed a house-keeper, with whom the child must associate, who is ignorant—wholly unfit to have the charge or care of children. No witness proves, that either appellant or this house-keeper ought to be allowed to have the care and education of the child. Sixth, from the nature of the case, and the provi-

sions of the law, it is impossible that the Court could have erred in deciding any legal question presented.

Upon the question of the custody of the child, the defendant relies upon the following authorities: Cowls *vs*. Cowls, 3 Gilman, 436; U. S. *vs*. Green, 3 Mason, 484–5; Foster and wife *vs*. Alston, 6 Howard Miss., 456; Morcien *vs*. The People, 25 Wendell, 103; Cook *vs*. Cook, 1 Barbour, 644.

Upon the question of alimony, it is not disputed but that the Court had the power to make the order; the form of the decree in this respect seemingly making the $15 per month payable, because the appeal was prayed, can have no influence upon the the question now before the Court. Jones *vs*. Jones, 2 Barbour's Chy., 147; 3 Barbour's Supreme Court, 624; 1 do., 431. This Court will understand the decree as requiring the appellant to pay $15 per month, pending the litigation.

This is the substance and effect of the order. Upon the question of the reading of the depositions, the appellee insists: First, that the depositions were already before the Court, having been read upon the trial for divorce. Second, that though it appears that the reading of the depositions was objected to, yet no exception was taken to their being read. Third, the depositions were regularly taken to be read as evidence in the cause; the witnesses reside in Jersey county; the Court was held in Greene county. Fourth, the ground of objection does not appear from the record; none was stated before the Circuit Court, and it is now too late to make objections which, if made in the Circuit Court, might have been obviated.

In the case of Reavis *vs*. Reavis, the Court decided that the party was entitled to alimony, and the question to be subsequently determined was as to the amount. It was, therefore, improper to introduce evidence upon the question already decided; but in the case now before the Court, the question of alimony had not been decided, and the depositions were properly admitted.

Opinion by Mr. Justice CATON:

No complaint is made of the decree granting the divorce. The principal question submitted for our consideration, relates to the proper disposition to be made of the child.

In determining this question, it is insisted that we ought not to look into the depositions, which were taken upon the trial of the main issue, and that we should limit ourselves to an examination only of such evidence, as was taken upon this incidental question. This is an appendage of the original suit, and all proofs regularly taken in the case, and bearing upon the present inquiry, are subject to an examination. We are asked to be more exclusive in the admission of evidence in this than in any other case, whereas the reverse of this proposition has been decided to be the correct rule, and so laid down in Cowls *vs.* Cowls, 3 Gilman, 435. In that case, also, the jurisdiction, powers and duties of a Court of Chancery, in the disposition of infants within its jurisdiction, are fully set forth; it is, therefore, unnecessary to enlarge upon them here. A Court of Chancery is seldom called upon to exercise a jurisdiction of so embarrassing and important a character as this, or one which requires more serious and anxious consideration. In the exercise of it we are called upon, not only to interfere with the interests of suitors, but to sound the deepest feelings of the human heart—the love of parents for their children. Especially in the present case, where the parents are separated by a divorce, and both seem equally attached to their offspring.

Upon the extent of the legal right of the father to the custody and control of his children, many contradictory decisions are to be found ; we think it clear, nevertheless, that he does possess that right, unless he has forfeited, waived or lost it, either by misconduct, misfortune, or some peculiar circumstances, sufficient in the opinion of an enlightened chancellor to deprive him of it. In the event of a separation of the parents, this right must be conferred upon one of them, otherwise the impulses of their natures would induce them to resort to violence to retain possession of their children. · Next to the right of the father that of the mother must be recognized. These rights, however, are subject to the control of the Court of Chancery, and when its aid is invoked, while it may not disregard the natural rights of parents, and the ties of blood, the best interests of the child must be primarily consulted. It is upon this consideration that an infant of tender years is generally left with the mother, (if no objection to her is shown to exist,) even when the father is

7

without blame, merely because of his inability to bestow upon it that tender care which nature requires, and which it is the peculiar province of a mother to supply.

This remark will apply with much force in cases of female children of a more advanced age. While the affection of parents for daughters may be equal, yet the mother, from her natural endowments, her position in society, and her constant association with them, can give them that care, attention and advice so indispensable to their welfare; which a father, if the same children were left to his supervision, would be compelled in a great degree to confide to strangers. I know there are some decisions of the common law Courts of England, of a late date, where they have, by the writ of *habeas corpus*, torn nursing infants from the arms of innocent and unexceptionable mothers, and placed them in the hands of fathers, to be reared by adulteresses, with whom the fathers were living. But so far as I am informed, a Court of Chancery has never been disgraced by such a decision. Clothed with more discretion, it is to be hoped that Court will continue to exercise that discretion under a more benign influence.

In no case do I find this legal right of the father asserted, where a divorce has been granted for his fault or misconduct. If such right ever did exist, so as to abridge or control the exercise of the equitable discretion of the Court of Chancery, it has been entirely removed by our statute; which authorizes the Court, when a divorce shall be granted, to make such order touching " the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just." What then is fit, reasonable and just, under the circumstances of these parties, and the nature of this case ? Such a case of ill treatment of the wife is shown, as authorized the Court, under our statute, to grant a divorce. In determining the question submitted to us, we shall not minutely review the evidence upon which that Court decided, but will content ourselves with remarking, that it shows the defendant to be a man of irascible temper and violent resentments, over which at times he loses all control. Towards his wife, at least, his conduct was so unreasonable, oppressive, and we may add cruel, as to render her life miserable, and to cause her health to be seriously impaired. It may be

that her education, tastes and habits of thought, may have unfitted her for the situation and circumstances in which she lived, and that she was unreasonable and irritating in her complaints; but these would not furnish a justification for the conduct of the husband towards her.   Towards the child, his conduct, so far as is shown from the evidence, seems to have been unexceptionable.   That he has the proper affection for her we may not doubt, and it may be that towards her his unfortunate temper would be but seldom manifested.  Notwithstanding this, it cannot be expected that he would bestow that personal care and attention upon a girl seven or eight years old, which may be expected from a mother, who appears to be well qualified for the care of the child, and against whom no just objection is shown to exist. If left with the father, the child must, to a great extent, be entrusted to the superintendence of others; her nature will lead her to associate with her own sex, by whom her manners will be formed, her thoughts and tastes directed, and, in truth, her character mainly moulded.   His occupations will doubtless prevent that constant watchfulness over her, so essential to her proper cultivation, and which could be better contributed by a vigilant and tender mother.   We shall, therefore, leave her for the present, at least, where she has been placed by the Circuit Court.

It is apparent from the record that there is some intention on the part of the mother, if allowed to retain the custody of the child, to remove her beyond the limits of the state.   This cannot be tolerated, and must be guarded against.   While the custody of the child is given to the mother, the father must not be wholly deprived of its society, but must be allowed access to it upon all reasonable occasions.   The child, although intrusted to the care of the mother, is nevertheless the ward of the Court, and any attempt on the part of either parent to alienate its affections from the other, would be a contempt of the Court, and would be visited by its judgments as such.   Indeed, this, by whomsoever attempted, would be held to be an abuse of the child, which the Court would consider it a solemn duty to prevent.

That portion of the decree which awards to the complainant in the bill the sum of fifteen dollars per month, to be paid by the respondent, is reversed, and the remainder of said decree is

affirmed, with costs. Upon this condition, however, that the said complainant enter into a bond to the people of this state, in the sum of two thousand dollars, with security to be approved by the master in chancery, or the clerk of the Circuit Court of Greene county, conditioned that the child shall not be removed beyond the jurisdiction of the state, and shall be produced at any time hereafter, upon the order of the said Circuit Court. And the suit must be remanded for such further action as future circumstances may require in the premises.

*Decree modified.*