Goldie Buehler, Appellant, v. Albert C. Buehler, Appellee.

Gen. No. 39,956.

Heard in the second division of this court for the first district at the February term, 1939.

Opinion filed May 2, 1939.

JACOB G. GROSSBERG and HARRY MAY, both of Chicago, for appellant.

VERNON R. LOUCKS and A. J. HENNINGS, both of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Goldie Buehler filed a complaint against her husband, Albert C. Buehler, in July, 1935, which, as amended, prayed in the alternative for divorce or separate maintenance. After an extensive hearing as to the merits of the controversy by the court and a separate hearing before a master in chancery, to whom a reference was had as to the property rights of the parties, a decree of divorce was entered in favor of plaintiff October 20, 1937, on the ground of cruelty. The decree allowed plaintiff as permanent alimony for herself $175 a month, and the further sum of $75 for each of two minor children, whose custody was awarded to her; she was awarded the household goods, an equal interest with defendant in the equity to the real estate held by the parties jointly, which has been occupied as their home,

and a total of $4,500 solicitors' fees, including $500 paid during the trial; and defendant was required to pay reporters' fees and other costs in the case. Defendant is apparently satisfied with the provisions of the decree, but plaintiff has prosecuted an appeal therefrom in so far as it awarded custody of the youngest child, Rose Marie, to defendant and not to her; in refusing to permit her to withdraw her prayer for divorce and in not granting separate maintenance; in awarding her what she considers an inadequate allowance for herself and the children, in the light of defendant's annual average income, as well as the amount of solicitors' fees, which plaintiff says should have been at least $10,000.

The record brought up on appeal consists of more than 1,500 pages. There are two transcripts, one of the evidence taken before the master and the other embracing the hearing before the court. The essential facts disclose that the Buehlers were married in 1919 and had four children whose ages when this proceeding was instituted were: Carl, 14; Barbara, 13; Albert C., Jr., 12; and Rose Marie, 8. After their marriage the material home surroundings were progressively improved. They first occupied a small apartment, then a larger one, and ultimately purchased a home in Kenilworth for $45,000. Until 1930 the parties were happily married. During that year Mrs. Buehler had to undergo two operations, one in April and another in September. The attending physician advised that for a year at least she was not to undergo any emotional strain and during that period the parties did not cohabit as husband and wife. Plaintiff testified that at the end of that year she was prepared to resume normal married life but that defendant repulsed her on one pretext or another, and much evidence was adduced suggesting that during the period of enforced abstinence on the part of plaintiff, defendant had formed a liaison with a young woman in his employ. Mrs. Buehler as-

serts that from that point on defendant's attitude toward her changed completely; that he reduced her allowance for expenses, frequently stayed away from home, provoked arguments of various kinds, and seemingly pursued a course of conduct for the attainment of his desire to ''get rid of her''; and all this is attributed to the liaison she says he contracted during the year of enforced abstinence brought about by plaintiff's illness. Defendant, on the other hand, attributes the rift in their domestic relationship to the depression and the refusal of plaintiff to adjust herself to the financial curtailment necessitated by conditions subsequent to 1930. The fact remains, however, that they finally separated, after increasingly aggravating and offensive circumstances at home and never resumed their conjugal relations after 1930. Inasmuch as the complaint is predicated upon charges of cruelty and the decree was awarded plaintiff on that ground, we consider it unnecessary to discuss the evidence relating to the merits of the case, except in so far as the facts may have some bearing upon those portions of the decree from which plaintiff has prosecuted this appeal.

It is first urged that the court erred in entering a decree for divorce rather than one for separate maintenance. The original complaint prayed for divorce, but before trial an amendment to the complaint prayed in the alternative for divorce or separate maintenance. Evidence on the general merits was then heard by the court, but the questions as to the amount of alimony and the property rights of the parties were referred to a master. The master made certain recommendations as to the payment of alimony, support for the children, and the adjustment of the property rights. At the conclusion of the hearing before the court and after the court had announced his decision including the amount of alimony to be awarded plaintiff, and also in respect to the custody of the children, plaintiff asked leave to amend her complaint so as to make the cause

solely one of separate maintenance. This motion was overruled. Plaintiff argues that although technically the court could exercise discretion in allowing or refusing to allow her to withdraw her prayer for divorce, leaving only the alternative prayer for separate maintenance, it was nevertheless "against the spirit of equity and public policy to have denied her that request, as applied to the facts in this case"; and she asserts that she was divorced against her will. The record indicates, however, that plaintiff had in the first instance filed a complaint for divorce, and that although she had amended the prayer thereof by seeking divorce or separate maintenance in the alternative, it was only after the parties had gone to great expense in a hearing before the master on the question of alimony and the property rights of the parties, and after the chancellor had announced his decision, that she definitely indicated her desire for separate maintenance rather than divorce. If plaintiff had indicated at the outset that she desired a decree for separate maintenance, it would not have been necessary for the master to have taken voluminous proof on the question of the property rights of the parties and the consequent expense of such a hearing would have been avoided. The amount to be awarded to her under a separate maintenance decree could readily have been determined by the court without a reference. Her motion for a decree at the conclusion of the hearing was made after the court had announced his decision, not only on the merits of the case, but also as to the amount to be awarded her and the various provisions of the decree, and her dissatisfaction with the court's decision undoubtedly influenced her in making the motion. Under the circumstances, plaintiff is not in any position to complain, and we think the court did not abuse its discretion in entering a decree for divorce. (*Soltysik v. Soltysik,* 317 Ill. 247.)

The awarding of the custody of Rose Marie, the youngest child, to defendant, is assigned as another ground for reversal. This child was 10 years of age at the time the decree was entered, and although there is evidence tending to show that she was quite fond of her father and spent considerable time with him, the law is well settled that the best interests of the child must be primarily consulted. (*Miner v. Miner,* 11 Ill. 43, 49, 51; *Gillett v. Bryant,* 203 Ill. App. 322, 324; *People v. Schaedel,* 340 Ill. 560, 563, 565, 566; *Draper v. Draper,* 68 Ill. 17, 20.) This is especially true where the father is found at fault and a decree is entered in favor of the mother, against whom no improper conduct is charged and who on the record appears to be a perfectly fit and proper person. At the age of 10 or 12, Rose Marie for many years to come will be in need of the constant watchfulness, guidance and affection of the mother. The father, who is required to attend to his business during the day is often absent from the city on business during periods of time, cannot bestow the care on an infant daughter that is ordinarily required. During his absence from the city she will have to be left in the care either of strangers or an aged paternal grandmother, and as between either of these alternatives there is no question but that the mother is entitled to the custody. We are therefore impelled to hold that in the interest of the child's welfare her custody should have been awarded to the mother instead of to the father, with the same rights of visitation as provided in the decree with reference to the other children.

This leads to a consideration of the principal controversy in the case, namely, the allowance of alimony and support for the children. Shortly after the complaint was filed a motion for temporary alimony was made and at Mr. Buehler's suggestion the sum of $300 was allowed. After an extensive hearing the master increased this amount by recommending $175 a month

to Mrs. Buehler and $75 for the support of each of the two children whose custody was awarded to her, aggregating $325 a month, and the decree so provided. Out of the sum awarded her plaintiff is required to pay one-half of the taxes on the Kenilworth property and also one-half of the interest on a $14,000 mortgage on this property. From the evidence adduced before the master, it appears that defendant was the oldest son of Carl Buehler, Sr., the founder of two extensive businesses, that of Buehler Brothers, Inc., a packing concern operating a chain of retail meat market units in the United States and Canada, and the Victor Adding Machine Company, a manufacturing concern. When defendant purchased the home in Kenilworth in 1925 his income from these two sources had reached a substantial amount. By agreement of counsel for the parties, qualified auditors were allowed to examine the books and records of the two foregoing concerns, as well as defendant's personal accounts, and considerable evidence was introduced before the master, including the auditors' reports, showing defendant's progressive earnings and income from 1925 to 1935, when the parties finally separated. It appears from this evidence that from 1925 to 1930 defendant's income ranged from $23,000 to $37,000 a year, and during these years he accustomed his family to a mode of living which called for an expenditure of about $18,000 a year.

The auditors' report as to defendant's personal assets and liabilities as of December 31, 1935, indicates total net assets of $213,454.07. This includes some cash, his interest in the Kenilworth property, which is fixed at $5,000, stock of the Victor Adding Machine Company amounting to $54,345, stock of Buehler Brothers, Inc., valued at $126,900, and an undivided interest in Personal Property Trust, valued at $37,976.20. Defendant's liabilities aggregated $25,365.47. One of the auditors testified that it would be difficult to establish a value for the common stock held in the Victor

Adding Machine Company and Buehler Brothers, Inc., because of the negligible common stock earnings during the past 10 years, and also because the stock of neither of these concerns was listed on any exchange, and for the further reason that it would be difficult to dispose of his minority holding. The auditors placed a book value on this stock, however, and said that the stock has a definite value to its present owner, because by virtue of his ownership of the stock, combined with family affiliations of the majority stockholders, defendant would undoubtedly be able to retain an official position with the company, thereby maintaining his personal salary.

It appears also from the auditors' reports that defendant's estimated salary from the Victor Adding Machine Company from 1925 to 1936 was in excess of $12,000 for every year except 1933 and 1934, and during most of these years it approximated $18,000. In addition to these earnings, he received annual dividends varying from $2,300 to $18,000 from the two business ventures, and his total income from 1925 to 1936 varied from $12,000 to $34,000 annually. In 1934 and 1935, which were the two years during which defendant claims to have suffered the most serious effects of the depression, his total incomes, were respectively, $13,-636.08 and $13,637.82. Against these incomes there were, of course, deductions for interest, taxes, contributions and unusual and nonrecurring losses. It is significant, however, that during the greatest period of depression, as defendant claims, he was able to contribute $1,500 to one philanthropic enterprise alone, and also made other charitable contributions. When the marital relations of these parties became progressively worse in 1933 and 1934, the Buehler family created a real estate trust and some of defendant's earnings were placed into that trust. It is argued that he then began to "cover up," and that his claim of poverty is not borne out by the record. Without a

further extended discussion of Mr. Buehler's circumstances we are convinced, from a careful examination of the records and of the auditors' reports and accounts, that he was a man of considerable means in 1935, and that his income even during the two years of 1933 and 1934 was sufficient to have justified a larger award to plaintiff. The auditors' reports show that defendant kept no books and records of his own and they were required to rely almost entirely on information which they derived from sources made available by defendant. It was discovered, for instance, that one item which defendant kept from the auditors made a difference of more than $3,000 in the amount of the indebtedness he claimed to have borrowed from the Victor Adding Machine Company to pay the costs of detective services. These services amounted to approximately $5,000, money expended by defendant for tapping Mrs. Buehler's telephone and keeping one or two operatives in constant attendance, with a view to procuring some evidence against her, which, however, never materialized.

Under all the circumstances of record we think the amount awarded plaintiff was inadequate. With the additional custody of Rose Marie, she will have to maintain herself and rear and educate three children now at the age where educational and other expenses will increase rather than decrease. We believe therefore that an allowance of $300 a month for Mrs. Buehler and $75 a month for each of the three children, aggregating $525 a month, or $6,300 a year, would be more in keeping with the circumstances of the parties and with Mr. Buehler's earnings.

The remaining objection to the decree relates to the amount awarded to plaintiff for her solicitors. She was awarded an aggregate of $4,500 for that purpose. One of plaintiff's counsel testified that he had necessarily spent 700 hours up to the time of the conclusion of the evidence, but not including the proceedings thereafter, which required services pertaining to the entry

of the decree and this appeal. The record, as hereinbefore stated, is quite voluminous, the printed abstract alone running to over 400 pages. The attorneys' fees, based on the amount of time spent, amount to approximately $6 an hour. We think an additional $1,500 should be allowed plaintiff for her counsel for the services terminating with the conclusion of the proceedings before the trial court, and another $1,000 for services entailed in the entry of the decree and the prosecution of this appeal.

It is therefore ordered that the decree of the superior court be reversed in the following respects: (1) That the custody of Rose Marie be awarded to plaintiff; (2) that the permanent alimony of plaintiff be increased to $300 a month; (3) that she be allowed an additional $75 a month for each of the three children placed in her care; and (4) that she be allowed an additional $1,500 for services rendered by her solicitors up to the conclusion of the proceedings before the trial court, and $1,000 for services rendered thereafter, including this appeal, and that the cause be remanded with directions to amend the decree so as to conform with the views herein expressed, and that it be affirmed in all other respects.

*Decree of superior court reversed and cause remanded with directions to amend decree so as to conform with views herein expressed; affirmed in all other respects.*

SCANLAN, P. J., and SULLIVAN, J., concur.