Paul J. Serotzke, Appellee, v. Lourrinne M. Serotzke, also known as Lourrinne M. McBroom, Appellant.

Gen. No. 44,353.

Opinion filed November 3, 1948. Released for publication December 2, 1948.

VAN NATTA & VAN NATTA and JOHN B. KING, all of Chicago, for appellant.

FRANCIS J. KENNEDY and THOMAS A. McCAFFREY, both of Chicago, for appellee.

MR. JUSTICE LEWE delivered the opinion of the court.

This is a proceeding to modify the provisions of a Nevada divorce decree which awarded the care and custody of the two minor children of the parties to the mother, defendant herein. Upon a hearing the chancellor modified the decree by awarding the custody to the plaintiff. Defendant appeals.

Defendant's principal contention is that the evidence fails to show any change in circumstances since the rendition of the Nevada decree to warrant a modification thereof.

The essential facts are substantially undisputed. Plaintiff Paul J. Serotzke and defendant Lourrinne M. Serotzke were married September 11, 1926. Two children were born of this marriage, Donald aged seven and Carolyn aged three. The Serotzkes resided at 1336 George street in the City of Chicago, Illinois. On August 14, 1945, Mrs. Serotzke took her minor children and went to live on the farm of one Homer McBroom, which is located about seven miles southeast of Pawnee, Oklahoma. She had met McBroom about seven years before while he was performing as a "bronc rider" with a rodeo at Chicago. At the time Mrs. Serotzke and her minor children came to live with McBroom she knew McBroom had a wife who was insane and then an inmate of the Eastern Oklahoma Hospital at Vinita, Oklahoma, and McBroom knew prior to Mrs. Serotzke's desertion she had been living with her husband and family at their domicile in Chicago.

December 22, 1945, McBroom obtained a decree of divorce from his wife Helen Kidder McBroom in

the district court of Pawnee county, Oklahoma. This decree provided, *inter alia,* that it would not "become absolute and take effect until six months after the date thereof." Shortly thereafter Mrs. Serotzke moved to Wadsworth, Nevada and instituted divorce proceedings in Washoe county, Nevada against her husband, the plaintiff herein. In that proceeding Mr. Serotzke filed a cross complaint charging his wife with adultery. The cause was heard at Reno, Nevada on January 25, 1946. On April 24, 1946, a decree of divorce was granted Mr. Serotzke (plaintiff herein) on his cross complaint. In that decree the court found, among other things, that Homer McBroom was a "human scavenger"; that "the conduct of Mrs. Serotzke with the minor children and her associate Homer McBroom indicates that she is planning a direct road to juvenile delinquency." The decree provided that the custody of the two minor children be awarded to Mrs. Serotzke with the right of the father to visit the children and have them in his custody at all reasonable and proper times, and that "during the time said children are in the custody of the plaintiff, plaintiff shall at least once every month notify defendant of the place where said children are and advise him concerning their physical welfare."

On January 27, 1946, McBroom, accompanied by Mrs. Serotzke and her children, drove to Las Vegas, Nevada, where Mrs. Serotzke and McBroom were married. Immediately after the marriage ceremony McBroom, Mrs. Serotzke and the children returned to McBroom's farm near Pawnee, Oklahoma. October 25, 1946, a child was born to Mrs. Serotzke and McBroom in the Municipal Hospital at Pawnee, Oklahoma.

McBroom's farm is improved with a four-room farmhouse and a barn which has a four-box stable and a granary. Mrs. Serotzke testified that she came to the McBroom farm in August of 1945 and that she and the minor children lived "in the saddle house." McBroom

testified that he lived with her "ever since August 1945."

When Mrs. Serotzke left the McBroom farm at Pawnee for Reno to institute her divorce proceedings against her husband, she and the minor children were transported there by McBroom in his automobile. After the hearing on January 25, 1946 at Reno, Nevada, McBroom drove Mrs. Serotzke and her children to Las Vegas, Nevada and after the marriage ceremony McBroom transported them back to Pawnee. It is undisputed that on these trips to Nevada and back to Oklahoma Mrs. Serotzke, McBroom and the children lived at tourist camps and hotels and that the lodging and other expense was paid by McBroom.

In June 1946, about the time Mr. Serotzke learned of the whereabouts of his wife and children, he drove to the McBroom farm to see his children. While there he instituted habeas corpus proceedings in the district court of Pawnee county. In his petition he alleged that the Nevada divorce decree "granted him the right to visit said children and have them in his custody at all reasonable and proper times, and that said mother of said children should at least once every month notify petitioner of the place where said children were and advise him concerning their physical welfare; that said petitioner has been denied the right to see and be with said children by the mother of said children within the past ten days, and that said mother did not write or advise your petitioner as to the condition of said children, and that said children are now being restrained illegally." After a hearing that court entered a decree which found that the only question presented for determination was the right of visitation on the part of the father, plaintiff herein, and held that the custody of the minor children as determined by the Nevada divorce decree should not be disturbed or modified.

In the instant case defendant Mrs. Serotzke maintains that the inquiry should have been confined

to matters occurring since the rendition of the Nevada and Oklahoma decrees. We think defendant's contention is without merit.

It should be noted that when McBroom married the defendant on January 27, 1946 at Las Vegas, Nevada, he violated the divorce decree of the district court of Pawnee county, Oklahoma, which did not become absolute until June 22, 1946.

With respect to the Nevada divorce proceeding, Mrs. Serotzke testified in the present case that "It was heard one day and the court made the decision the next. I don't know when he signed the decree." At the time the Nevada divorce decree was signed on April 24, 1946, that court could not have known of the alleged marriage of Mrs. Serotzke and McBroom at Las Vegas three months before (January 27, 1946). It is inconceivable that the Nevada court would have given the custody of the minor children to Mrs. Serotzke under these circumstances, particularly in view of the court's characterization of McBroom. These were material facts existing at the time the Nevada divorce decree was entered, but obviously unknown to the Nevada court and therefore admissible as evidence in the present case.

The paramount consideration in determining to whom the custody of a child shall be awarded after divorce is the welfare and best interests of the child. (*Buehler v. Buehler,* 373 Ill. 626; *People v. Schaedel,* 340 Ill. 560; 27 C. J. S. p. 1170, sec. 309.)

McBroom testified that he was convicted of a felony in 1938; that he received an annual rental from his farm of $40; that his farm was mortgaged for one-half its value; that he had borrowed $1,112 to buy an automobile and a saddle; that he has a "little income" which he inherited from his first wife, an Indian girl; and that his annual earnings were about $4,000.

Plaintiff owns and operates a small machine shop and in 1946 his earnings were about $7,000. He pres-

ently resides with his sister and brother-in-law. Because of plaintiff's inability to enter his son Donald in the public schools due to their crowded condition he has engaged a private tutor. The youngest child has not attained school age.

We think, all the evidence bearing on McBroom's divorce, his character, his relations with Mrs. Serotzke, and the circumstances surrounding his marriage to her is competent.

By her hasty marriage to McBroom defendant virtually forces the children to live and associate with him. To compel children of tender years to live in this environment is not conducive to good moral training and the best interests of the children.

In determining to which parent the custody of the children will be awarded the court has a large discretion. (*Draper v. Draper,* 68 Ill. 17.)

From a careful examination of the record we think the chancellor was amply justified in modifying the decree by awarding the custody of the children to the plaintiff.

For the reasons given, the order here appealed from modifying the decree is affirmed.

*Decretal order affirmed.*

BURKE, P. J., and KILEY, J., concur.