**Constance W. Nye, Appellant, v. Herbert Nye, Appellee.**

**Gen. No. 45,279.**

Opinion filed May 9, 1951. Released for publication July 5, 1951.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for appellant; ALBERT E. JENNER, JR., and ROGER W. BARRETT, both of Chicago, of counsel.

FRED A. GARIEPY, ROBERT E. CANTWELL, JR., and LOUIS YAGER CANTWELL, all of Chicago, for appellee; JOHN SPALDING, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a child custody proceeding. The parties were married in 1938 and divorced upon plaintiff's suit December 21, 1948. Under an agreement of the parties, incorporated in the decree, plaintiff had custody during the first year of their only child Diane, called Penny. During the early morning hours of February 25, 1949, the defendant carried the child away from plaintiff's custody without permission. She petitioned the court

for an order restoring to her the custody of Penny and for other relief. Issues were made on this petition and defendant's cross-petition for permanent custody which charged plaintiff's unfitness.

December 22, 1949, after several hearings on the pending issues, the custody provisions of the divorce decree were modified. Plaintiff was found unfit for custody of Penny and permanent custody was awarded defendant. The modification decree contained no findings or orders with respect to other relief prayed for by plaintiff. This appeal followed. The chancellor entered an order refusing to make the appeal act as a supersedeas. That order was reversed and supersedeas allowed. *Nye v. Nye,* 342 Ill. App. 11.

The divorce complaint charged defendant with wilful desertion without cause since November 1, 1947. The chancellor found that defendant had deserted plaintiff without cause for more than one year immediately prior to the suit filed November 15, 1948. He also found the best interests of the child were served by dividing custody of Penny in accordance with the agreement of the parties. Under the agreement made August 6, 1948, custody of Penny was given each party, alternately, beginning with plaintiff, for periods of one year each. Possession of a small house in Wayne, Illinois, was to be concurrent with custody.

The chancellor decided the instant issues in favor of defendant on his cross-petition. He found that the circumstances of the parties had materially changed since the divorce decree and that plaintiff was unfit for custody of Penny. He modified the custody provisions of the divorce decree by giving sole custody of Penny to defendant subject to visitation privileges of plaintiff which included six-weeks custody each summer.

The question on appeal is whether the chancellor abused his discretion in modifying the custody provisions of the divorce decree.

The findings of change in circumstances indicates that the chancellor treated the original decree as having determined plaintiff's fitness at that time and that since that decree was entered, changed circumstances had rendered her unfit. The testimony of the relationship between plaintiff and Bruckner prior to the divorce decree was admitted by the chancellor. We infer from the wording of his oral decision that the chancellor considered that testimony. The parties dispute the admissibility of that testimony. Plaintiff claims that the divorce decree was conclusive of the facts then existing in view of the defendant's knowledge then of the facts even if not disclosed then to the chancellor. This objection would be valid (*Hewitt v. Long*, 76 Ill. 399) if this proceeding were merely between plaintiff and defendant. Where the best interests of a child have been involved, however, this Court has approved admission of testimony of facts prior to the decree unknown at the time by the chancellor. *Harms v. Harms*, 323 Ill. App. 154; *Serotzke v. Serotzke*, 335 Ill. App. 485. The divorce decree established plaintiff's fitness for custody at the time. The testimony of plaintiff's misconduct with Bruckner in February 1949 was the basis of the claim and finding of change of circumstances since the divorce decree. Testimony of other conduct previous to the decree not bearing on that misconduct was not admissible on the question of change of circumstances.

It is not denied that the testimony of plaintiff's predivorce conduct was not offered at the divorce hearing. We cannot assume that the chancellor at the divorce hearing would have disapproved the agreement upon which the custody provisions were based, had the testimony been offered. Defendant was satisfied that plaintiff was then a fit custodian of Penny. It is true that he claims he did not know of the testimony of a former maid until after the divorce decree was entered.

481

He also claims he withheld his own testimony at that time to protect Penny. The maid's testimony harmful to plaintiff is that Bruckner stayed overnight at the Nye home during defendant's absence in January 1947, and that plaintiff cautioned the maid against disclosing to defendant this event and cautioned the maid and Penny against disclosing other visits and telephone calls of Bruckner. The maid's testimony was cumulative proof of the relationship which defendant suspected during the period of his desertion of plaintiff and which he testified she admitted in the spring prior to the divorce.

We think that the finding that there was a material change of circumstances is wrong as a matter of law. It is plain that, taking the defense testimony of events prior to and after the divorce as true, there was no change in the relationship of plaintiff and Bruckner between the decree and their marriage.

The divorce was granted because defendant deserted plaintiff. Her post-divorce misconduct was not legal adultery, as defendant refers to it, since neither plaintiff nor Bruckner was at the time married. The basis of his complaint as to plaintiff's conduct thereafter is that she breached her promise to reform her relationship with Bruckner. The defendant apparently considers this promise to have been a "condition precedent" to the exercise of her right to custody under the agreement between the parties which was incorporated in the decree. No such condition is in the decree. There is no claim that any other condition was attached to plaintiff's custody rights.

The chancellor's finding of plaintiff's unfitness is separate from the finding of the change of circumstances. We shall assume that the chancellor considered separately the question of plaintiff's fitness at the time of the filing of defendant's cross-petition. On this assumption we think the finding would rest on the

evidence of plaintiff's post-divorce misconduct with Bruckner. The finding was based on the allegation and testimony that defendant and detectives employed by him surprised plaintiff and Bruckner in the act of sexual intercourse in the Wayne house on February 25, 1949. This was the early morning event which prompted defendant to carry away Penny who was sleeping in an adjoining room. Plaintiff and Bruckner denied they were having intercourse at the time. They also denied other acts of sexual intercourse imputed to them by inferences from observed circumstances on previous occasions.

There is no showing of unfitness on the ground of plaintiff's lack of care of Penny since the decree. The testimony of plaintiff's care of Penny, of the relationship between them, of plaintiff's housekeeping ability and of the Bruckners' circumstances, compel that conclusion.

 We have read the many cases, from this and foreign jurisdictions, cited by the parties, on the question of priority of right to custody. There is no definitive rule stated in the cases we have read which would control our decision. Each case stands on its own facts. It is clear, however, that the courts are influenced by one or more of many factors, including the age, health and sex of the child; the characters and material circumstances of the parties; preference indicated by the child; cause of the divorce; to whom the divorce was given; and the future welfare of the child. Generally, where the child is of tender years and a girl, the courts have tended to favor the mother provided there were no other factors affecting the child's welfare which militated against custody being awarded to the mother. The welfare of the child is the principle of decision. This principle has influenced courts to give custody to mothers even though there is a showing of adultery or extra-marital sexual intercourse or other

immoral conduct bearing on the capacity for good motherhood. The same principle has influenced other courts to deny custody to mothers where a showing of misconduct of this nature has been made. In Illinois the mother was favored in *Miner v. Miner,* 11 Ill. 43; *The People ex rel. Gaddis v. Gaddis,* 240 Ill. App. 508; *People v. Hickey,* 86 Ill. App. 20; *Draper v. Draper,* 68 Ill. 17; *Pearson v. Pearson,* 179 Ill. App. 127; *Harms v. Harms,* 323 Ill. App. 154. The mother was not favored in *Scott v. Cohn,* 134 Ill. App. 195; *Zimmerman v. Zimmerman,* 242 Ill. 552; *Smith v. Smith,* 155 Ill. App. 14; *Liles v. Liles,* 336 Ill. App. 159; *Serotzke v. Serotzke,* 335 Ill. App. 485. In *Buehler v. Buehler,* 305 Ill. App. 609, and *Umlauf v. Umlauf,* 128 Ill. 378, custody of the children was divided between the parents.

It is plain from these cases that plaintiff's misconduct with Bruckner does not *per se* disqualify her as custodian of the child. We do not condone plaintiff's extra-marital or post-divorce conduct with Bruckner. The evidence does not justify an inference of plaintiff's misconduct with any other man. Her marriage to Bruckner, while not an excuse for plaintiff's previous conduct with him, does suggest a reasonable hope for her future continence.

Plaintiff and Bruckner were married in the afternoon of February 25, 1949. Defendant claims the marriage was a hurried design to overcome the immorality in the early morning hours of the same day. There is no dispute about the fact that in January 1949, Bruckner asked plaintiff to marry him; that February 3rd he gave her an engagement ring; that at least a week prior to their marriage plaintiff and Bruckner had a premarital medical examination; that their Hinsdale home was purchased February 20th; that February 19th there was a prenuptial party with friends; and that the marriage had been arranged with the minister a week before the ceremony.

We see nothing in the relevant testimony, nor in any reasonable inference therefrom, indicating that Penny had on any occasion observed any misconduct on her mother's part. During the period before her mother married Bruckner, Penny was only about seven years old.

 Penny's welfare is the prime consideration. When the modification decree was entered she was seven years of age. This fact and the fact that she is a girl are important considerations favoring plaintiff. When the modification decree was entered, defendant had not remarried and he relied upon his married sister to furnish Penny care he was not able to give. These facts, the other undisputed facts in plaintiff's favor and the factual issue of the immorality of February 25th resolved in defendant's favor, were the basis on which the chancellor decided the question of fitness. We shall assume the chancellor decided the factual issue correctly. We think, nevertheless, the judgment of unfitness was wrong as a matter of law. It follows from this conclusion and our previous conclusion on the change of circumstances that the modification decree giving sole custody to defendant was an abuse of discretion. We believe that we have passed on all points necessary to the decision.

We conclude that the modification decree is erroneous and it is hereby reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

*Decree reversed and cause remanded for further proceedings.*

BURKE, P. J. and LEWE, J., concur.