Kay I. Kline, Plaintiff-Appellee, v. Geneva M. Kline
(Now Geneva M. Croxen), Defendant-Appellant.

Gen. No. 64–44.

Third District.

March 30, 1965.

Edward A. McIntire, of Kankakee, for appellant.

Bernon G. Butz, of Kankakee, for appellee.

CORYN, J.

This is an appeal from a decree modifying custody provisions of a divorce decree entered January 24, 1963, changing the care, custody and control of the six children of the parties from defendant mother, Geneva Kline, now Geneva Croxen, to the plaintiff father, Kay I. Kline, and relieving plaintiff of the obligation of making future support payments as of

March 1, 1964, upon which date custody was transferred. The petition of plaintiff, which culminated in the modification decree complained of, and which was filed on June 3, 1963, charged that subsequent to the divorce decree, the defendant has been living in open adultery, was pregnant by her paramour, and had been supporting him with the payments plaintiff makes for the support of his children. On June 24, 1963, defendant filed a cross-petition for authority to change the domicile of the children from Kankakee County, Illinois, to Stone County, Missouri. On August 24, 1963, she filed an answer to plaintiff's petition denying its allegations, and asserting her marriage to one Boyd Croxen. Defendant also alleged that she and her new husband have business interests in Missouri; that it is to the best interests of the children that their custody remain with the defendant; and that she be given authority to remove them to Missouri. The trial court referred these petitions and answer to the Master for hearing and findings of fact, and thereafter approved the report submitted, and entered the decree now brought for review.

It is defendant's theory that the admissible evidence bearing on the question of her fitness to retain custody fails, as a matter of law, to justify a change of custody to the plaintiff, and that the evidence of circumstances existing at the time of the hearing clearly establishes that it is to the best interests of the children that defendant retain custody, and that defendant's petition for change of domicile be allowed. It is plaintiff's contention that the modification decreed by the chancellor was fully warranted by the evidence and the law, and that the determination should not be overruled here unless the evidence shows it to be clearly and palpably erroneous.

██ It is long established law that where both are fit persons, the principals to a divorce proceeding

246

have equal right to custody of their minor children, and that the paramount consideration in settling the issue of child custody is the welfare and best interests of the children themselves, without any purpose of penalizing the parent upon whom the blame for the dissolution of the marital union may be fixed. Ill Rev Stats c 3, § 132 (1963); Schmidt v. Schmidt, 346 Ill App 436, 105 NE2d 117 (2d Dist 1952). Although it is admittedly a flexible guide, and every case must be controlled by its own facts and merits, courts have sometimes ruled that the interests of children of tender years are better served when their care is committed to the mother. Nye v. Nye, 411 Ill 408, 105 NE2d 300 (1952); Wolfrum v. Wolfrum, 5 Ill App2d 471, 126 NE2d 34 (3d Dist 1955). In any event, once the issue is settled, it requires substantial evidence of new facts to justify an alteration. Nye v. Nye, 411 Ill 408, 105 NE2d 300 (1952). It is not necessary for the validity of an order changing custody to another parent, however, that the evidence of new facts establish the present unfitness of the parent to whom custody has been previously entrusted, if other circumstances are clearly shown which require a modification for the welfare of the children. Osborn v. Hufsey, 44 Ill App2d 157, 194 NE2d 556 (4th Dist 1963).

 The decree of divorce in the case at bar incorporated a stipulation of the parties and awarded custody to defendant. This decree was an adjudication as to all known facts in existence at that time on the question of defendant's fitness. Nye v. Nye, 411 Ill 408, 105 NE2d 300 (1952). At the subsequent hearing on the plaintiff's petition for modification, evidence of facts predating that decree could not be heard for the purpose of impeaching defendant's fitness, but this is not to say that it was inadmissible for every purpose, as defendant contends, for such evidence is competent where it relates to other new circumstances having

bearing on the question of the children's welfare. Nye v. Nye, 343 Ill App 477, 99 NE2d 574 (1st Dist 1951), affd Nye v. Nye, 411 Ill 408, 105 NE2d 300 (1952).

The decree complained of in the instant case was not based on any finding that defendant is an unfit person. It was rested instead upon the finding that the person to whom defendant is now married, and who at the time of, and previous to the hearing, shared with her the opportunity to direct and influence the lives of the children, is a person of such demonstrated instability and weakness of character, with habits of unemployment and a history of serious indiscretions and drunkenness, as to make it improbable, until his resolve for reform should be executed, that he and defendant can provide, in the home they share, a reasonably suitable climate for the wholesome physical, mental, emotional and moral growth and development of the children. The chancellor also found that the children's welfare has been adversely affected by defendant's diversion of the children's support money to the support of her new spouse, and for the payment of his debts, and found that the care which the father of the children can afford is superior to that which defendant can provide, not merely from the point of view of material advantage, or because his proof of affection was any greater, but because the evidence of his habits and abilities demonstrates that he will offer the quality of parental guidance that is necessary in molding good citizens of his small children. In determining the question of whether the home defendant provides was and is suitable, or whether the character of the person to whom she is now married was or is satisfactory, it was not improper or incompetent for the chancellor to consider evidence of Mr. Croxen's conduct and habits predating the decree, which awarded custody to defendant, merely because such evidence also tended to show that defendant herself participated

248

with him in some impropriety, and that such evidence might be barred from consideration on the issue of her fitness. Nye v. Nye, 343 Ill App 477, 99 NE2d 574 (1st Dist 1951), affd Nye v. Nye, 411 Ill 408, 105 NE2d 300 (1952). Thus, if the competent evidence sustains the findings of the chancellor, a decree of modification based on them alone, and without a finding that defendant is unfit, would be fully warranted by the law. Osborn v. Hufsey, 44 Ill App2d 157, 194 NE2d 556 (4th Dist 1963).

■ There is very little, if any, dispute about the evidence in this case, and it is clearly an applicable rule of law that we may not reverse the chancellor's findings unless they are against the manifest weight of the evidence. Schmidt v. Schmidt, supra. The witnesses were numerous and the evidence is lengthy, and no purpose would be served by reciting every detail. Because courts are charged by tradition with heavy responsibility where the interests of children are involved, we have studied the record very closely, and find it heavily weighted in support of the chancellor's determination. Although defendant and Croxen are now married, and urge that the ultimate ruling of Nye v. Nye, 411 Ill 408, 105 NE2d 300 (1952) is an applicable precedent, we do not agree. The alleged sexual transgressions in that case transpired between unmarried persons during the morning hours of the day on which the participants, pursuant to previous plans, were married. The child involved in that custody contest was a seven-year-old girl who knew nothing of her mother's indiscretion, and appeared well loved and cared for. Without condoning the mother's anticipation of her marital rights with one Bruckner, the Supreme Court said that the evidence did not show that the mother and her new husband were sexually involved with others. On the whole, said the court, the evidence does not establish that the mother was

249

promiscuous, but, to the contrary, establishes a reasonable hope for her future continence. In Arden v. Arden, 25 Ill App2d 181, 166 NE2d 111 (3d Dist 1960), also cited by defendant, the proof of the mother's misconduct subsequent to the divorce decree was inconclusive. There was no evidence in either Nye v. Nye or in Arden v. Arden as there is in the case at bar, that in view of changed circumstances, the father of the children could provide better care, or that the character of the person to whom the mother was married was unsatisfactory, and there was clearly no showing in those cases, as is true here, that the interests of the children were in fact detrimentally affected by new circumstances.

■ Under the facts in the record here, we think the case of Osborn v. Hufsey, supra, is the applicable precedent. The evidence here shows that Croxen, while married himself, dated other women besides defendant. He and defendant were discovered in adultery at a motel, and the divorce between plaintiff and defendant followed. She was given custody and substantial support allowances on her representation to plaintiff that the Croxen affair was over. The original decree was entered on plaintiff's complaint for cruelty. Defendant was then, as she asserts now, or later became, pregnant by Croxen, and the fact of her pregnancy was not known by the trial court or plaintiff at the time of the divorce. Barely a month after the decree was entered, Croxen, still married to another woman, moved into the Kline house which had been awarded defendant, and lived with her continuously. Croxen was divorced in Missouri on May 22, 1963, and he and defendant were married in Arkansas on June 19, 1963. Their child was born on June 6, 1963. Plaintiff filed his petition herein on June 3, 1963. During all this time, Croxen, a young man of 30 years, shared a

common bed with defendant, and together they held themselves out as husband and wife. Their adulterous relationship was no simple indiscretion, and no mere imprudent anticipation of a marital right. It was assumed on a permanent basis at a time when they were not legally free to marry each other, and was no less adulterous or any more legitimate because many people may have believed they spoke truthfully that they were husband and wife. The six Kline children, including a boy of 14 years and a girl of 13 years, lived with defendant and Croxen during this period, were exposed to their disrespect of the law and disdain of the standards of morality accepted in the community, and appear to have been aware of some improprieties. During all this time, Croxen, who is an attorney, was unemployed, and there is sufficient evidence to justify the chancellor's finding that defendant used some of the support money for Croxen's support and for the payment of his debts. This evidence certainly substantiates the chancellor's finding that the children's interests have been adversely affected by circumstances arising since the earlier decree. Croxen himself has no money or property, and among his debts were many incurred by bad checks issued by him in various amounts to various persons for which he had not sufficient funds. At one time he wrote as many as six such checks in one week. These checks were paid with funds provided by his mother or by defendant after Croxen was threatened with disbarment. Although Croxen testified that he had a promise of employment as a claims adjuster for a Missouri insurance firm for a starting salary of $5,500 per year, the evidence of his past employment record is reasonable cause for some skepticism on the probability of his steady employment in the future. Croxen confessed at the hearing that during the two months following the

discovery of his adultery with defendant at a Kankakee motel, he was continuously inebriated. Defendant, in the spring of 1963, had placed for sale the Kankakee home she was awarded in the divorce decree, and at the time of the hearing the evidence indicates she and Croxen were living in Missouri with the six children in a two-bedroom "A" frame mountain cottage located on an 86 acre recreational tract owned by the defendant, upon which there is also a house trailer which they used. The mountain cottage has no plumbing facilities. Their promise and hope for better rental facilities seemed somewhat dependent on Croxen's success at his new employment.

Numerous witnesses on behalf of the father of the children characterized plaintiff, without contradiction, as a man of substantial earning power, financially responsible, a religious man of high moral standing and reputation, a Sunday School superintendent, a man who when he lived with his children involved them and himself in church and scouting activities, taught them swimming, archery, horseback riding, and many other skills. The house he will provide is more than adequate, and the children will be enrolled in the same public schools that they now attend. The evidence also shows that plaintiff's work schedule as a chiropractor will permit him to be with his children during most of the time they are not in school, and that he is fully able and willing to care for them.

Defendant argues that plaintiff's publication of her "scandal" in his petition for modification here has caused more certain injury to the children's welfare than anything she has done, and because of this reckless publication, it is in the best interests of the children that they be moved away from Kankakee where gossip will do them harm. We find no merit in this contention.

252

We conclude that the decree of modification entered by the chancellor is fully supported by the evidence and the law, and it is accordingly affirmed.

Affirmed.

ALLOY, P. J. and STOUDER, J., concur.