Virginia Harms, Appellee, v. Gunther Harms, Appellant.

Gen. No. 42,983.

Opinion filed May 19, 1944.

DITCHBURNE & BOEHLING, of Chicago, for appellant; HARRY S. DITCHBURNE, of Chicago, of counsel.

LOUIS L. COHEN, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Gunther Harms and Virginia Jensen were married at Evanston, Illinois on October 16, 1938. Two children were born of the marriage, Valerie, now about four years of age, and Virginia, now about two years of age. The parties separated on March 24, 1943. On that day Mrs. Harms filed a complaint for separate maintenance in the superior court of Cook county. On April 26, 1943, plaintiff, by leave of court, filed an amended complaint for divorce, charging extreme and repeated cruelty. On the same day the defendant answered and denied that he was guilty of extreme and repeated cruelty. On the same day the parties filed a stipulation that the cause come on for immediate hearing "as in the case of default." Plaintiff introduced evidence on April 29, 1943. Plaintiff and her father, Fred Jensen, were the only witnesses. They testified to purported acts of cruelty by defendant. Defendant was represented by his brother-in-law Mr. James W. Fry. Plaintiff informed the chancellor that subject to the approval of the court, the parties agreed that she would have the custody of the younger child, Virginia, and that defendant would have the custody of the older child, Valerie. Asked as to the reason for such arrangement, she answered: "I figure it is only fair. They are his children as well as mine and he should have one child as well as I have one." She testified further that her husband would make his home with his mother and that his mother would have the "actual

control'' of Valerie. She stated that both children were to be given wide and full opportunity each week to spend as much time in each other's company as possible so as not to forget each other; and that each parent would have an opportunity each week, or at more frequent intervals, to have the child not awarded to him or her in his or her custody ''so that each may retain the affection of both children.'' To the statement and question: ''Such arrangement, however, is not binding upon the court. If the court finds this arrangement is not to the best interest of those children at any time during their minority, you realize that the court will have a right to change such custody?'', she answered: ''Yes.'' To the further question: ''Are you satisfied to proceed under that method for the time being to see how it works out?'', she answered: ''Yes, I am.'' The court was informed that defendant and his mother lived and would continue to live on the south side, and that plaintiff was then living and would continue to live with her parents in the Edgewater Beach Apartments, 5555 Sheridan road, Chicago. Mr. Fry, representing defendant, announced that he did not care to ask any questions. Defendant did not offer any evidence. On May 12, 1943 the chancellor (the late Judge OSCAR NELSON) entered a decree severing the bonds of matrimony on the ground that defendant was guilty of extreme and repeated cruelty, and awarded the custody of Valerie to defendant and of Virginia to plaintiff, providing that in each week each child should be permitted wide opportunity of visiting with and being in the company of her sister; that each week each of the parents should be afforded broad and liberal opportunity to visit with the child in the custody of the other parent, to the end that both of the children ''shall grow up to know each other intimately, and to be fully aware of their parentage, and to have the opportunity of cultivating a normal relationship with both of their parents''; and defendant

was required to pay plaintiff for her support and for the support of Virginia the sum of $65 per month, $30 of which was understood to be for the support of plaintiff and $35 for the support of Virginia. The decree gave further directions as to the payment of attorney's fees and the disposition of certain life insurance and articles of furniture.

On October 6, 1943 plaintiff filed a petition and on the basis of certain allegations therein made, prayed that the decree be modified so as to grant custody of Valerie to her. Answering the petition, defendant denied the allegations on which plaintiff predicated her request for relief. After a hearing the chancellor (Judge John Sbarbaro) found that it was no longer to the best interests of the children that their custody be divided; that it is to the interest of the children that they be raised, supervised and educated together "as members of a single family group"; that plaintiff is better able to "fulfill the obligations of the custody of said children" than defendant; that she is a fit and proper person to have the custody of the children; and decreed that until the further order of the court the custody of Valerie and Virginia be given to plaintiff; that on each alternate Saturday at 2:30 p. m. defendant have the right to take Valerie and that he return her to plaintiff by 7:00 p. m. the following day; that on Thursday of each week during which he is not to have Valerie on the week-end, he have the right to visit the children at plaintiff's home, or to take Valerie with him between the hours of 2:30 and 5:30 p. m.; that during the entire month of August of each year defendant have the right to custody of Valerie; and that all rights of visitation and custody with respect to Valerie apply with respect to both children when Virginia attains the age of three years. Defendant appeals.

The evidence in the divorce case was heard on April 29, 1943 and the decree entered on May 12, 1943. Between these dates defendant took custody of Valerie.

The terms of the decree have been carried out by the parties. They arranged and observed a regular visitation schedule. Virginia, who was about one year old when the decree was entered, lives at the Edgewater Beach Apartments on the north side of Chicago with plaintiff and the latter's mother and father. Valerie, who was about three years old at that time, lives with the defendant and his mother, Mrs. Rita Harms on 62nd street on the south side of Chicago. Defendant's brother-in-law, Mr. James W. Fry, testified that he lives with his wife and child on 61st place; that his home and defendant's home are in close proximity; that the child of Mr. and Mrs. Fry, about the same age as Valerie, plays with Valerie; that sometimes they play in the Fry yard and sometimes in either of the apartments. Defendant's mother sleeps in the Fry home and spends her days keeping house and does the cooking in her son's apartment. Valerie is in good health and receives the same care and attention as the Fry children. Defendant is 39 years old, controls the disposition of his own time, and owns and operates a home study school located at 307 North Michigan avenue, Chicago. He was born in Chicago. He testified that he is anxious that Valerie receive "proper American education and religious training." During the month of July, and running into August 1943, Valerie, with the consent of plaintiff, was in northern Wisconsin with defendant and his relatives. Defendant's sister, Mrs. Fry, was very kind to plaintiff and wrote her how Valerie was getting along.

Defendant, arguing for a reversal of the supplemental decree, which altered the provisions of the original decree as to the custody of the children, asserts that there was no substantial change in the situation of the parties; that the interests and welfare of the children did not demand it; and that the action of the court was manifestly against the weight of the evidence. Plaintiff maintains it is the well-settled rule

that in awarding the custody of a minor child, the best interests of the child must be primarily consulted, and that the evidence supports the decree. The paramount consideration in determining to whom the custody of a child shall be awarded after a divorce, is the welfare and best interests of the child. The parties agree that this is the law. Defendant insists that a decree fixing the custody of a child should not be changed unless the conditions affecting the situation have changed since the entry of the decree, citing *Thomas v. Thomas,* 233 Ill. App. 488. In the *Thomas* case the court relied on *Cole v. Cole,* 142 Ill. 19. The *Cole* case did not involve the custody of a child, and it was held that in the absence of new facts the original decree is deemed to be *res judicata* as between the parties. In the *Thomas* case the court, after discussing the *Cole* case, said (493):

"We have no doubt but that the same rule should apply where the custody of a child is involved unless it is made to appear that it would be for the best interests of the child to give it to another."

From this statement it will be seen that the Appellate Court was of the opinion that "in the absence of new facts" the original decree would be deemed *res judicata* as between the parties unless it is made to appear that it would be for the best interests of the child to give it to another. Apparently the court had in mind that the children were not parties to the divorce case, and that the rule of *res judicata,* while applicable between the parties, would not be allowed to interfere with the duty of the court to enter an order in accordance with the best interests of the children. The court would not be justified in altering the original decree as to the custody of the children unless there was a change in the situation, or unless facts or circumstances which should have been called to the attention of the court at the time the decree was entered, were overlooked.

The original complaint was for separate maintenance. An amended complaint was filed asking for a divorce. Defendant filed an answer contesting the grounds for divorce. On stipulation the matter was heard "as in cases of default." Plaintiff and her father were the only witnesses at the divorce hearing. She testified that there was an agreement as to certain matters, including the custody of the children, and stated that she thought it was only fair that the father should have one child and she the other. She understood that defendant would live with his mother and that the mother would help to take care of the child. She also testified that she realized that if the court should find the arrangement as to the custody of the children not to be for the best interests of the children at any time during their minority, the court could change the custody, and she was satisfied to proceed "under that method for the time being to see how it works out." In her petition she represented that she submitted to the arrangement as to the custody of the children in order to avoid "painful hearings in open court" and that if she did not submit, the children would have been subjected to publicity which would have reacted detrimentally to their future welfare. Defendant, answering, denied this charge, and stated: "Plaintiff was anxious for a divorce. That she had slight, if any, grounds, is best indicated by the allegations she made in support of her case for divorce. Defendant apparently was interested mainly in the custody question; on the concession she made he did not oppose the divorce." It appears from the statements of the respective parties that in hearing the divorce case, the question as to the custody and welfare of the children was treated by them as of minor importance. Plaintiff was anxious to obtain a divorce and made the agreement as to the separation of the children in order to avoid any contest, and defendant did not oppose the granting of the divorce, apparently being satisfied to

obtain the custody of one of the children and the right to visit the other. The divorce case proceeded as though section 10 of the Divorce Act (sec. 11, ch. 40, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 109.178]) were nonexistent. This section reads:

"If it shall appear, to the satisfaction of the court, that the injury complained of was occasioned by collusion of the parties, or done with the assent of the plaintiff for the purpose of obtaining a divorce, or that the plaintiff was consenting thereto, or that both parties have been guilty of adultery, when adultery is the ground of complaint, then no divorce shall be decreed."

There was evidence that plaintiff goes to the home of defendant on Mondays for two hours to visit with Valerie; that they usually take Valerie to the park; that plaintiff is never allowed to tend to any of Valerie's wants, hold her hand or play with her; that during plaintiff's visits with Valerie, defendant never talks to plaintiff; that plaintiff has not had an opportunity of being alone with Valerie, except on August 5, 1943, at the time Valerie came back from her vacation in Wisconsin, when plaintiff was permitted to have her for a day. There was also evidence that on Thursdays, when defendant brings Valerie to plaintiff's home, they meet in the yard and the two children play together; and that defendant does not talk to the younger child, Virginia, but only to Valerie. Plaintiff testified that she was allowed to take Virginia to defendant's home to visit Valerie on one occasion, that being when Valerie was going on her vacation to Wisconsin; that he was bringing Valerie to her home to see only the plaintiff and no one else; and that he did not want her parents to even look at Valerie. Defendant admitted it was unpleasant for him to see plaintiff or her parents. Plaintiff stated further that Valerie cries violently every time she leaves Virginia and that Valerie would like to stay with her sister;

that Valerie says: "I don't want to go home, I want to stay at Virginia's house;" and that Valerie cries and screams at the conclusion of every visit. In this plaintiff was corroborated by her mother, Mrs. Fred Jensen. The defendant testified that "on the occasion my wife brought the child back upstairs to the apartment, the child cried as she cries very often when she had to leave her mother's home. She is apt to cry at either end of the line." Plaintiff testified that defendant slaps Valerie; that on August 5, 1943, following Valerie's return from her vacation in Wisconsin and her visit to her mother, plaintiff's father drove her to defendant's home to return Valerie; that Valerie did not want to go home, but wanted to go back to see her sister; that Valerie cried; that defendant hit Valerie; and that Valerie cried so loudly that plaintiff's father could hear the cries all the way from the third floor apartment down to the street. The testimony of plaintiff's father tended to corroborate her testimony as to this incident. The defendant testified: "I did not slap the child. I did not strike her at all. I just took her into the apartment. I did not strike the child as Mrs. Harms has related. I have slapped her now and then when she was disobedient. Yes, in a very mild manner. I am not abusive or cruel to the child." In answer to the question: "So, if he wanted to slap the child, what would you do about it?", defendant's mother, Mrs. Rita Harms, answered: "He hardly ever slaps the child." To the further question: "Hardly ever?" she answered: "Unless absolutely necessary." Plaintiff testified that defendant swore at her, and that on Mother's Day in 1943, which was observed between the hearing of the divorce case and the entry of the decree, she brought Virginia to the yard at the Edgewater Beach Apartments; that she told defendant her mother and father would like to come down and see Valerie; that defendant said: "I bring her over here

for you to see and no one else to see''; that he swore at her; and that plaintiff told her father and mother when they came down to the yard what defendant said and that he did not deny it. The testimony of Mr. and Mrs. Jensen tended to corroborate the testimony of plaintiff as to this incident. Plaintiff testified further that on August 5, 1943 Valerie had been away on her vacation in Wisconsin on her birthday, and that she brought a dress for Valerie as a birthday gift, and that defendant swore at her when she gave the dress to Valerie.

The chancellor was in a better position to determine the credibility of the witnesses and the weight to be given their testimony than this tribunal. It is apparent that the welfare of the children was not the paramount consideration in determining their custody at the time the original decree was entered, and that the respective parties considered the custody of the children as a means of bargaining over whether or not the application for divorce would be contested. There was no evidence offered that plaintiff is not a fit mother to have the care and custody of the children. In our opinion the supplemental decree is not contrary to the manifest weight of the evidence. It is supported by the evidence. We have not detailed the defendant's denials of the charges contained in the testimony. We have given the affirmative reason for our opinion. From the evidence presented it is apparent that it will be for the best interests of both children that the custody be in the mother, as the court decreed. At the time of the hearing in the divorce case the parties and the court recognized that the situation of the children would be in the nature of an experiment. It was also recognized that the court would change the order as to the custody of the children should the arrangement not work out satisfactorily. It did not work out satisfactorily either for the welfare and best

interests of the children, or for the parties, and the court exercised a wise discretion in recognizing that fact and in altering the decree accordingly.

For the reasons stated the decree of the superior court of Cook county entered on November 3, 1943, is affirmed.

*Decree affirmed.*

HEBEL, P. J., and KILEY, J., concur.