**Mary Esther Mikrut, Plaintiff-Appellant, v. Stephen Mikrut, Defendant-Appellee.**

**Gen. No. 69–4.**

Second District.

September 18, 1969.

Arthur B. Carlson, of Harvard, for appellant.

Berry, Simmons & Coplan, of Rockford, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

The judgment of the trial court modifying an initial divorce decree, which awarded custody of four small children to their mother, by removing two of the children to their father's custody is challenged on this appeal.

Custody was originally determined in a contested hearing on August 10th, 1967. The children are Katherine, then age 3½ years, Stephen, 2½ years, Carol, 1 year, and Cherryl, age 2 months. The court, in awarding custody in connection with the decree of divorce commented that he was doing so "on the basis of the Probation Officer's report, and the report from the H. Douglas Singer Psychiatric Center."

At this hearing the probation officer, who had been directed by the court previously to investigate the homes of the parties, was present in court and gave as his opin-

ion that the mother should have custody. He was precluded from further explanation by the judge who indicated he had read the full report. Neither this report nor that referred to as the one from the Psychiatric Center were filed of record. Other testimony was taken which indicated that the mother was unemployed and living with her parents and planned to seek job training and secure a home of her own.

A decree of divorce was signed on September 15th, 1967, incorporating the award of custody to the mother, the plaintiff here.

On April 19th, 1968, defendant filed a petition alleging that "plaintiff has mistreated said children, kept them ill-clothed, kept them ill-fed, and on numerous occasions has inflicted physical harm to said children," and further alleging that he had "a suitable home to adequately and properly take care of said children."

On August 21st, 1968, a full hearing on the petition was held before the trial judge below, who was not the judge who had heard the previous proceedings.

Defendant testified, without objection,

> ". . . on February 7th, Carol was taken to Beloit Hospital, and Mary said she fell out of the high chair and she had her arm in a sling for two weeks. And then on March 3rd, we picked the children up and Kathy had a black and blue mark on her butt. She said her mother beat on her with a stick.
>
> ". . .
>
> ". . . On March 31st when we picked up the children, Stephen's nose, forehead and chin were bruised. There were no scratches on the rest of his body. Mary said he fell out of a go-cart, but he looked like he was badly beaten, and he said his mother beat on him."

The father further testified, without objection, that the children told him that at some earlier date plaintiff was

448

sleeping with her boyfriend (now her present husband) in one room, and that the children were two and three in a bed and one had to sleep on the floor.

Small photographs showing a mark on one of Katherine's buttocks and a mark on Stephen's face were admitted. These are in the record before us and are inconclusive. Defendant described a "black and blue mark" on Katherine, and as to Stephen, "a bad bruise on his chin and forehead, and his nose was black and blue."

Defendant described the adequate farm home where he lived with his parents and testified that the children enjoy being there.

Defendant's brother testified that the children "looked undernourished" when they were with their mother.

Plaintiff testified that she fed, clothed and housed the children properly and did not mistreat them. She testified that Stephen received the bruises described when he fell out of a go-cart and she disclaimed any knowledge of the mark on Katherine.

She testified that she had remarried and that the home in which she lived was a two bedroom house with a double bed in one bedroom and a baby bed added to the second bedroom. The plans would be for the youngest to sleep in her room on a rollaway bed and the other children to sleep in the second bedroom temporarily, but that soon they would trade with her parents and move into a four bedroom home.

A report of a social worker, a Mrs. Floberg, assigned by the court to investigate the respective home life of the parties is referred to in the record, but the report is not made a part of the record, nor is there any indication as to its contents.

Before ruling on the petition for the change of custody, the court indicated that the father's home was a good one and that it had always been his feeling that the children should be kept together,

"But I think I have one or two problems. They need their mother more than they need their father. For that reason I am going to order that the Petition be granted as to Kathy and Steve, I will grant custody of those two to the father. The Petition is denied as to Cheryl and Carol, who will remain with the mother."

The plaintiff argues that the mere showing that defendant could give the children a home with better physical facilities is not the showing of a change in circumstances affecting the children sufficient to change a custody order previously entered after a full hearing; and that the custody of small children should not be taken from their mother without a showing of her unfitness.

Defendant maintains that the custody decree is always subject to being changed from time to time as the best interests of the children demand, and that "when the record does not contain the evidence upon which the order was entered, every presumption is in its favor." [1]

[1] Defendant appears to be referring to the report of the social worker, Mrs. Floberg, not in evidence, when he states in his brief and argument:

It is unfortunate that the record does not disclose in greater detail the stability of the homes of the respective parties here, since it appears by implication that the trial court may have perhaps given great weight to the physical accommodations that each of the parties could provide for the children. Mention was made in the record of a certain report from a Mrs. Floberg, who appears to have made an investigation of the two homes, on order of the court. Neither party made any objection to the court's use of said report. The report itself has not been set out as a matter of record, which is extremely unfortunate, since it appears that the court may well have placed great reliance on it. It may, in fact, have been the determining factor in the court's resulting order . . . .

The difficulties inherent in the use of an investigative report which is not a part of the record is illustrated in this argument

450

Plaintiff responds that there was no express finding by the court that the mother was unfit or that her home was unsuitable, or that the children had been abandoned, neglected or mistreated, or that the welfare of the children warranted splitting them up, and that the order, therefore, is unsupported in the evidence.

It is not necessary that special findings of fact be made or set out in the decree. Ill Rev Stats 1967, c 110, § 64(3). The burden of preserving the necessary evidence supporting an order or decree in equity by findings of fact in the decree or by a certificate of evidence is no longer upon the person in whose favor the decree or order was entered. Canady v. Canady, 30 Ill2d 440, 446–7, 197 NE2d 42 (1964).

■■ If the record does not contain the evidence upon which the order was entered, every presumption is in its favor. Martinec v. Sharapata, 328 Ill App 339, 344, 66 NE2d 103 (1946); Stern v. Stern, 40 Ill App2d 374, 382, 188 NE2d 97 (1963). But that rule of law does not support defendant's argument as to the effect of the order changing custody. Unlike the fact situation in Martinec and Stern, supra, the testimony and evidence was preserved here and the issue is whether, on the record, defendant has sustained the burden of proof warranting a change in custody. It is clear that the party seeking to alter the custody provisions of the decree has the burden of proving that the child's best interests warrant the change. Vysoky v. Vysoky, 85 Ill App2d 306, 310, 230 NE2d 3 (1967).

■ ■ While the trial court has been given large discretion in ruling on petitions for change of custody, it is a judicial discretion and must be subject to review on the evidence heard in open court and no waiver or agree-

and the equally unsupported argument of the plaintiff that the report was "unchallenged" and was "favorable" to the plaintiff.

ment between counsel can bind the minor, whose interest is the main question to be considered—without a hearing in conformity with substantial due process. Cohn v. Scott, 231 Ill 556, 559, 83 NE 191 (1907) ; Walter v. Walter, 61 Ill App2d 476, 479–80, 209 NE2d 691 (1965) ; Harris v. Spencer, 86 Ill App2d 41, 45–6, 229 NE2d 16 (1967) ; Williams v. Williams, 8 Ill App2d 1, 5–7, 130 NE2d 291 (1955).

The use of an investigative report of a social worker not appearing in the record, as a basis for the court's finding, was held to be reversible error in Des Chatelets v. Des Chatelets, 292 Ill App 357, 359, 11 NE2d 13 (1937). See 35 ALR2d Annotated, pp 630, 635.

■ If we were to assume, contrary to defendant's argument, that the court gave no consideration to Mrs. Floberg's report, we find an insufficient basis in the evidence for the change of custody ordered. The showing as to changes of conditions affecting the best interests of the children in this case is insufficient to warrant a change in the prior determination of custody. Nye v. Nye, 411 Ill 408, 416, 105 NE2d 300 (1952).

■ Defendant argues that the facts upon which the initial determination of custody was made are not clear in the record, in that it appears that a probation report and the report of the Singer Psychiatric Clinic, neither of which were in the record, formed a substantial basis of the initial determination of custody. The initial decree awarding custody has not been directly attacked and cannot be so challenged in these proceedings. The evidence in the record of the original custody hearing is, of course, available for the purpose of determining whether changed circumstances affecting the interests of the children have intervened since the initial custody order. But there was no showing in the record before us for review of any real change in the housing conditions from those outlined by the mother in the original hearing. Nor was there any real proof of other changes in

circumstances affecting the welfare of the children. There was purely hearsay testimony of the defendant that the children had told him that the bruises and abrasions were caused by the plaintiff. However, the mother denied that. While there was no objection made to the recital by the father, the court indicated at a later stage in the father's testimony that he was not giving credence to hearsay.[2]

■■ The testimony did not establish that the mother was unfit and the court did not make such a finding. Although this is not a required showing preliminary to taking custody of small children from their mother, it is a circumstance to be considered. Giacopelli v. Florence Crittenton Home, 16 Ill2d 556, 566, 158 NE2d 613 (1959); People ex rel. Edwards v. Livingston, 42 Ill2d 201, 210, 247 NE2d 17 (1969). Similarly, while there is no prohibition against separating children for the purpose of custody (see Umlauf v. Umlauf, 128 Ill 378, 21 NE 600 (1889)), such procedure is unusual as family ties between children of the same parents are not to be disturbed lightly. (98 ALR2d Annotated, p 926.)

On the record available to us for review, we find that the action of the trial court was against the manifest weight of the evidence and we, therefore, reverse and remand.

Reversed and remanded.

MORAN, P. J. and DAVIS, J., concur.

[2] At one stage in the testimony defendant testified that the mother's house looked small, but admitted that he had not been in the inside of the building, whereupon the court commented,

You see, you can't give any testimony as to what the children told you because that is hearsay and it isn't admissible.