RODNEY DALE WINDHORN, Plaintiff-Appellant, *v.* TONI GAYNELLE WIND-
HORN, Defendant-Appellee.

(No. 70-50;

Third District—December 2, 1970.

Leonard F. Sacks, of Kankakee, for appellant.

Paul T. Manion, of Hoopeston, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court.

This cause involves an appeal from an order of the Circuit Court of Kankakee County, changing the custody of the minor daughter of the parties to this cause from the father, Rodney Dale Windhorn, to the mother, Toni.

The record shows that on November 15, 1967, the plaintiff Rodney Windhorn was divorced from his wife, Toni Windhorn, on the ground of adultery. The custody of the minor child of the parties, Ronda Windhorn, born February 9, 1965, was awarded to the father, with visitation rights in the mother. The wife testified, at the hearing in this cause, that she did not actively contest the custody award in 1967, because at that time she was a "nervous wreck" and did not know what to do with herself and felt that she could not care for the girl. Also, a year before the actual divorce, there was a hearing incident to preliminary divorce proceedings as to the custody of Ronda as a result of which the husband was awarded temporary custody. At the time of the divorce in 1967, the wife was 18 years of age, not working and living with her parents. She testified that she had no way to care for Ronda in 1967, and thought that because of the prior custody award she would not have much chance to obtain custody of Ronda. In early 1968, the wife filed a petition for change of custody which was denied. She was not married at that time, but was working and felt her emotional health was much better.

In July of 1969, the mother of the child again filed a petition for a change of custody. She alleged that she had remarried and was living with her present husband. It was also pointed out that Ronda would have a bedroom of her own if she were able to live with the petitioner. She also stated that her new marriage and the fact that she and her husband had a rental home in Hoopston, Illinois, created a material change in the wife's circumstances so as to make it unsatisfactory for the minor child to remain in the husband's custody. She also alleged in the petition that the husband had not spent adequate time with the child and, as a result, the education of the child and her development was impaired. It was also alleged that

the husband placed the girl in the home of his parents and, as a result, did not have actual physical custody of the child. The mother of the child alleged that the best interest of the child required that she, as the mother, be given custody of the child.

At the hearing in the cause before us, the wife testified that she and her present husband got along "just beautifully," and that her emotional outlook had changed to where she no longer acted on impulse. She admitted that when she was married to Rodney Windhorn, she did run away with another man, but felt she had matured since that time. It was also pointed out that petitioner and her present husband had a daughter, Mitzy, who was younger than Ronda. They stated that Ronda greatly admired Mitzy and when Ronda visited, they shared the same room with separate beds because Ronda wanted to sleep with her baby sister. Petitioner also asserted that Ronda was a bit slower than most five years olds, particularly as to colors and counting. She admitted, however, that to her knowledge, nothing detrimental had occurred to Ronda in the 18 month she was with her father. Petitioner contended she could easily take care of the two children with no problems.

The present husband of petitioner, Jay Grogan, who was 23 at the time of the hearing, spoke of the times when Ronda had visited and called him "Daddy Jay." He confirmed that he and Toni were happily married and that there would be no difficulty in adjusting to Ronda in their home. He also testified that he earned approximately $86 a week net income and felt that they could live comfortably on this.

A clinical psychologist, Mr. Fiore, also testified for the mother of the child. He stated that he had conducted one examination and a clinical interview with both Toni and her present husband. He expressed his opinion that Toni was stable at the present time and that her marriage appeared to be harmonious, with personal happiness as well as marital happiness. He saw no indications that Toni could not properly provide an environment conducive to the psychological health and growth of Ronda. He stated that he was impressed by the good relationship between Grogan and the child and the interest that Mr. Grogan had shown in obtaining custody. He also stated that it is generally better for a child to be raised in a two-parent home unless the two parents are both inadequate people, in which case it would be better for the child to be with one parent.

Rodney Windhorn, the natural father of the child, testified that at one time he changed jobs and took a pay cut in order to be able to spend more time with Ronda. He pointed out that he and Ronda lived with his mother and father on a farm and that his mother, who was 47 years of age at the time of the hearing, cared for Ronda while he was at work.

Rodney stated that he had a girl friend but was not in any hurry to remarry. He also stated that the daughter's educational development had not been impaired in any way since he had custody, and that his circumstances had not changed since the divorce, with the exception of the change in his job. Rodney Windhorn's mother also testified that she cared for Ronda and felt that Ronda was a bright, healthy child. It was also pointed out that Ronda had her own room and was happy to see her mother when her mother came for visitation. The record also disclosed that the mother, Toni, had never missed a visitation during the period Rodney had custody.

The trial judge, in the course of entering an order changing the custody from Rodney, the father, to Toni, the mother, wrote a memorandum in which he made some specific findings. While he found that Toni had not proved that plaintiff Rodney failed to spend adequate time with Ronda or that her educational development had been impaired, he found that Toni's marriage and the situation involved therein created a material change in her circumstances in that she was now adequately able to care for Ronda. The judge reviewed the wife's circumstances and found that she was now happily married, living a normal and stable life and able to take care of the child. He pointed out that the wife had exhibited an affection for Ronda by never missing a visitation. He then concluded that the prime question was what was to the best interest of the child, and stated that, balancing the advantages and disadvantages, it was for the best interest of the child to be placed in the custody of the mother with visitation rights in the husband. An order was entered to such effect.

■■ On appeal in this Court, it is contended by the father of the child, that the trial court considered only the remarriage of the mother and that this was not a sufficient change in circumstance to warrant a change in custody. We are aware that before a change in custody should be approved, there must be a substantial change in conditions which also affects the welfare of the child involved. Remarriage in and of itself would not be a sufficient change in circumstance to warrant such change in custody unless the remarriage also affected the welfare of the child. The question before us is whether the trial judge in the instant case correctly applied the test for change in custody.

■■ Under the law of this State, the welfare of the child is the sole consideration as to whether there should be a change in custody, and any change in circumstances of the parties will only be viewed in the light of its effect upon the child. In the case of *Nye v. Nye*, 411 Ill. 408, cited by appellant, it was pointed out that the guiding star at all times must be the best interest of the child. The court in that case also pointed out that

the question of custody of the child is always subject to order of court and could be changed from time to time as the best interest of a child demands. The decree is *res adjudicata* only as to the facts which existed at the time it was entered and not as to facts arising thereafter.

■■ In *Dunning v. Dunning*, 14 Ill.App.2d 242, the court reviewed most of the Illinois court decisions affecting change of custody and stated, in discussing *Wade v. Wade*, 345 Ill.App. 170, that the mere fact that there has been a change in conditions would not be in itself sufficient to justify modification of the decree, unless those conditions affect the welfare of the child. Both parties to this cause agree that this rule applies and that remarriage alone is not sufficient ground for change of custody.

■■ In reviewing the record, the trial court pointed out that the welfare of the child in the cause before us would be enhanced by a change in custody to the mother. It was noted that the change would allow the child to be in the care of her mother and be a part of a normal family circle. It was pointed out that there was a good relationship between the child and the stepfather. Advantages to the child of living in a home with two parents and a half sister were noted as offering a greater opportunity for love and affection for the child. The trial judge also considered the disadvantage of moving a child from a happy home where she received good care and had lived for two years. His conclusion that the evidence preponderates in favor of awarding custody to the mother as more likely to serve the best interest of the child in the long run, is supported by the record in this cause. In addition to the matters which were discussed previously, it is noted that the clinical psychologist in his testimony emphasized the value of a two-parent home for the benefit of the child. A factor also for consideration in this State, is that courts favor placing the custody of a small child, particularly a female, with the mother, if she is a fit and proper person to have such custody. As was noted in *Nye v. Nye*, 411 Ill. 408, at 414, the maternal affection is more active and better adapted to the care of a child of tender years. In the cause before us, defendant's concern for her daughter was confirmed by the fact that she never missed a visitation since she had been separated from the child. On consideration of the record, and all of the factors presented in this cause we do not believe that the order of the trial judge changing the custody to the mother was against the manifest weight of the evidence, or that such determination was based entirely upon the remarriage of the defendant as such. The court clearly conceived that it was in the best interest of the child, which was the sole consideration in determining the question of custody.

■■ In *Frank v. Frank*, 26 Ill.App.2d 16, a divorce had been granted in

1958. Custody of a two year old minor son of the parties was awarded to the father. The mother then married the man by whom she was pregnant at the time of the divorce and she then had a daughter. In May 1959, she sought to have custody of the boy transferred to her. The trial court allowed the change of custody to the mother and on appeal such order was affirmed. The Appellate Court in that case noted that the record supported the trial judge's finding that the mother was a good and proper person, and the change in circumstance arising from the remarriage of the mother was found to be for the best interest of the child. In that case it was found that it was not necessary to find that the father was unfit. The father in that case had not remarried and the boy was cared for by his grandmother and his aunt. In that case, as in the instant case, the mother had exercised all her visitation rights and also did not seek custody of the child at the time of the divorce because it did not seem to be the prudent thing to do under the circumstances. The court in that case pointed out that there was more in the record to justify the decree than a mere change in the mother's condition so as to distinguish this case from others where those circumstances did not obtain. The *Frank* case is closely parallel with the cause we have before us, although the record in the cause before us is stronger in support of the court's order than the record established in the *Frank* case. The trial judge had observed the witnesses, and is better able, on the basis of his observation, to assess the value of the testimony and study the personalities involved, than is a court of review. The order of the trial court should not be disturbed unless there is an obvious abuse of discretion or unless thoe order is contrary to the manifest weight of the evidence (*Wade v. Wade,* 345 Ill.App. 170; *Nye v. Nye,* 411 Ill. 408). We do not feel that the order is contrary to the manifest weight of evidence or that the record discloses an abuse of discretion.

In view of the record in this cause, we do not believe we would be justified in reversing the order of the Circuit Court of Kankakee County. The order of the Circuit Court of Kankakee County will, therefore, be affirmed.

Order affimed.

RYAN, P. J., and STOUDER, J., concur.