MARVA K. CLARK, Plaintiff-Appellant, *v.* HARRY C. CLARK, Defendant-Appellee.

(No. 11305;

Fourth District—August 27, 1971.

Trone & Trone, Rushville, for appellant.

Robert F. Scott, of Scott, Tisckos, Gray, Lober & Smith, of Springfield, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

By its order modifying a decree of divorce, the trial court changed custody of a four-and-one-half-year-old boy from the mother to the father. She appeals.

The original decree of July 29, 1966, approved an agreement of the parties that the male child, Duane Alan Clark, born July 31, 1965, should be under the custody of the mother, Marva K. Clark, subject to visitation rights of the father, Harry C. Clark, to have the child on the first and third week ends of each month from 7:30 P.M., Friday until 7:30 P.M., Sunday, and to have the child for one week in the summer after giving reasonable notice, and to have the child on alternate named holidays, to-wit: Independence Day, Labor Day, Thanksgiving Day, Christmas, New Year's and Easter.

These proceedings were initiated in December, 1969, during a period when the husband was enjoying his scheduled visitations by obtaining an injunction without notice and without bond restraining the mother from obtaining the custody of the child upon the scheduled conclusion of such visitation. The petition for modification alleged that the wife interfered with the father's visitation on many scheduled week ends and on holidays; that the child was found to be sick and in need of medical attention; that petitioner was informed and believed that the mother had struck and beaten the child causing bruises and cuts on the back, legs and arms, of which the child has complained; that the petitioner was informed and believed that the mother permits the child to drink beer

and that she has taken the child out of the State without the court's permission and without having executed a bond. Upon the latter point, so far as we can find from the record the child was once taken to a football game in St. Louis.

Since the divorce in this case the husband was re-married from April, 1967 to January, 1969, and he was thereafter married to his present wife in July, 1969. The latter had four children of her own in ages ranging from four to twelve. Although it appears that she was present, she did not testify in these proceedings, and the record does not show that she has expressed a desire to raise this child.

In September, 1967, the mother married a member of the State Police. Many persons of this community in which she resides testified to the present maintenance of a neat and comfortable home and described the care with which the child was kept. A daughter was born to this marriage in 1968. This step-father testified here to good relations with the boy and said, "I think a lot of him, and I would like to have him as mine in my house."

The trial court's findings in the order of modification include findings that material changes in circumstances had occurred; the mother has abused and mistreated the boy; the mother had inflicted excessive punishment in the discipline of the child and has neglected to supervise and care for the child, and that the best interests of the child's health and welfare require that he be taken from the mother; that the husband is a fit and proper person to have care and custody and that the mother is not a fit and proper person to continue in custody.

We have examined the record with care. The essence of the father's case is the testimony of the paternal grandparents who, it appears, kept a "record". The paternal grandfather refreshed his recollection to testify from a memorandum. Examination disclosed that he copied dates from his wife's calendar and that such memorandum omitted several periods of a week when the child had had no scheduled visits with his father.

Upon the issue of interference with the father's visitation, the remedy generally is not a matter of change of custody, but of contempt proceedings. The husband testified that the wife interfered with visitation on five or six occasions. The paternal grandparents testified to many occasions when the child did not make a scheduled visit, but there is, however, no equivalent testimony that the husband had sought such visitations. While not too specific, the record suggests that he was not regular in his appointed visits, and that it was the grandparents who travelled to get and return the child from January to August, 1969. The testimony in behalf of the petitioner is that from July, 1968, to this injunction, the visits were generally as scheduled and that upon at

least two occasions the child stayed for periods of a week not scheduled for such visits. It is apparent that the provision for custody on the alternate holidays is necessarily unsatisfactory where the parents are not upon good terms. The holiday which was missed by the husband would inevitably produce confusion and conflict concerning the future schedule. This record shows no proceeding for direction of the court upon the issue of interference with visitation or clarification of the schedule prior to the issuance of this injunction.

The testimony concerning the sickness of the child is that in January, 1969, the child was taken to the grandparents with a fever and sore throat. The apparent medical conclusion is that the child had bad tonsils. Treatment in the home was sufficient for this illness. Upon some prior occasions visits were postponed because the very young child had a cold or was thought not fit to travel for some two or three hours. On at least some of those occasions, the child was staying with the maternal grandmother while the mother was working. All witnesses agreed that the former took very good care of the child. There is very little in the record concerning an illness during the last year and one-half prior to this proceeding.

Testimony concerning the mistreatment of the child by the mother includes two occasions where bruises were seen upon his back. As to one of such occasions, the boy said to his father that he had fallen. The petitioner argues inferences from the boy's plain statement. As to the occasion in July, 1968, the mother testified that the boy was pushed into or against the table by a playmate causing bruises on his back. Her testimony involving scratches with scabs on the legs are traced to a cat. Infant injuries in these categories are matters of almost universal observation. The paternal grandparents testified to seeing four welts upon the leg. The explanation by the boy was that he had been poking the pet rabbit with a stick and that his mother had switched him with a stick here shown to be about two feet long and a fourth inch in diameter which had been part of a toy. His mother agreed that she had switched him when the boy was destructive or made assaults upon the family pets. She also testified that she had used the belt of the four year old to spank him, and that she had placed a bandaid across his mouth when he used improper language. The record discloses an effort to correct the more trying problems of childish waywardness. In *Mikrut v. Mikrut*, 113 Ill.App.2d 446, 251 N.E.2d 84, the court held that it was error to alter custody upon a small child's accounts of maternal beatings.

After obtaining this injunction and filing this petition and a partial hearing thereon, his attorney arranged for the father and the child to be interviewed by a psychiatrist. The latter was permitted to testify

over extended objection that he had interviewed the boy for ten or fifteen minutes and the father for some forty-five minutes. He testified, "My impression, first of all, this boy's mother must be a very brutal hysterical impulse ridden sadistic individual". We note, however, that his written report is in the language: "First of all, this boy's mother *sounds* like she must be a very brutal Hysterical Impulse Ridden Sadistic Individual." (Emphasis supplied.)

■ It was error to overrule the objection to such purported expert testimony which could only come from hearsay statements of a party to the proceedings. The value of such testimony is demonstrated by the psychiatrist's statement that the four-and-one-half-year-old boy, who had not seen his mother except for ten minutes during the previous six weeks, walked into the office of the psychiatrist, a stranger, announcing that he hated his mother.

■■ The court erred in admitting over objection certain testimony of the husband's mother purporting to show that the mother had married the father because of a pregnancy. It was asserted that such would be connected up with subsequent conduct to show the mother's unfitness to have custody. This was not done. Here, the original custody was conferred upon the mother by the agreement of the parties and approved in the divorce decree. In *Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300, the court said that misconduct prior to the divorce was not admissible as evidence of a change of condition supporting a change of custody. (*Jayroe v. Jayroe*, 58 Ill.App.2d 79, 206 N.E.2d 266.) By reason of the findings of the trial court, it can only be concluded that he considered such erroneous testimony in his finding that the mother was unfit. While it is customary to give weight to the findings of the trial court, nevertheless, in the matter of custody the conclusion is subject to review upon the evidence. *Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300; *Mikrut v. Mikrut*, 113 Ill.App. 446, 251 N.E.2d 84.

We have examined the cases cited by the father in the support of the change of custody. *People ex rel. Yarmulnick v. Hoff*, 323 Ill.App. 535, 56 N.E.2d 324, concerned *habeas corpus* by the father to obtain his child from a maternal aunt. In *Osborn v. Hufsey*, 44 Ill.App.2d 157, 194 N.E.2d 556 and *Kline v. Kline*, 57 Ill.App.2d 244, 205 N.E.2d 775, the custody was changed where the mother remarried and the respective step-fathers were shown to be of poor character and unable to maintain an adequate home. No such issues are in this record.

■ The burden of proof is on the father to show a change of conditions by competent evidence. In *Akin v. Akin*, 109 Ill.App.2d 150, 248 N.E.2d 829, it is said that the evidence supporting such change must be compelling to show that the mother is unfit, and that there must be positive

evidence that the best interests of the child require that the custody be taken from the mother. (*Mikrut* v. *Mikrut*, 113 Ill.App. 446, 251 N.E.2d 84.) The effect of the court's order is to place the boy of very tender years under the care of a step-mother who has expressed no interest in him.

Upon this record the order of the court is contrary to the manifest weight of the evidence. The order is reversed and the cause is remanded with directions to proceed in accordance with the views expressed herein.

Reversed and remanded.

SMITH, P. J. and CRAVEN, J., concur.