DANNY LEE MCDONALD, Plaintiff and Counterdefendant-Appellant, *v.* GLORIA D. MCDONALD, Defendant and Counterplaintiff-Appellee.

(No. 12143;

Fourth District—July 25, 1973.

Costello & McGary, of Springfield, (Michael J. Costello, of counsel,) for appellant.

Equi, Farwell, Rickelman & Proteau, of Oak Park, (William F. Rickelman, of counsel,) for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The father appeals from an order granting a change of custody to the mother.

The divorce was awarded upon the mother's counterclaim in July, 1972, and the decree awarded custody of Shawn, then aged four and one-half years old, to the father, and of Ryan, then aged two years eight months old, to the mother. The decree does not show that any evidence was heard upon the issue of custody and there is no finding of fact by the court or determination concerning the best interests of the children.

Such placing of the children had been arranged by the parents at the time of the separation in 1970, albeit there was thereafter some discussion of reconciliation between the parties prior to the date of the divorce proceedings.

The decree provided that each parent should have the child in the custody of the other on one weekend in each month and that each parent should have the custody of both children for two weeks in each of the months of June and August. The decree sets out the court's insistence that the boys be together in the periods of long visitation provided.

On December 2, 1972, the father re-married and Shawn now resides with his father, step-mother and the latter's two year old daughter. The father is employed as an electronics electrician with take-home pay of $137.00 per week. He and his family occupy a two bedroom apartment renting for $80.00 per month. Shawn's step-mother did not testify in these proceedings for change of custody and there is no affirmative evidence concerning her interest in, or wishes, regarding the raising of Shawn. The mother is employed in Oak Park earning $108.00 per week, and occupies a six-room apartment which is located adjacent to a park and school. During her working hours, the son, Ryan, was left with a baby-sitter, who is a neighbor.

At the hearing on the petition for change of custody, the parties stipulated that at the time of the divorce, the petitioner opposed the dividing of the children between her and her husband, but agreed to this arrangement on advice of counsel upon being informed that this was the only way to avoid a contested trial in view of her husband's insistence upon being made custodian of Shawn. The parties also stipulated that petitioner's counsel had advised her that she could petition the court for a change in custody about six months later due to a change in circumstances.

The father admitted that he had not exercised his full rights of visitation with his son, Ryan, although he saw Ryan at his parents' house in Vandalia two or three times when his former wife visited her parents in Vandalia. It was an eight-hour drive to Oak Park and back from Springfield, and he did not want to drive this distance twice on a single weekend in order to visit Ryan. The father testified that he had taken Ryan for only one week during August, instead of the two weeks allowed him by decree. The mother testified that her former husband had not taken Ryan since before the decree when she had requested her husband to take Ryan for a week. The mother had exercised her rights of visitation with Shawn by taking him for three weeks and some weekends since the time of the decree.

The mother testified that when the two boys are separated after each visitation, they both become upset. She said that Ryan cries all the way home because he is afraid that he won't see Shawn again.

There is no issue of the unfitness of either parent. Rather, the father contends on this appeal that his former wife failed to prove such a change in circumstances as would justify the modification of the original decree.

■■ In awarding the custody of the children, the court exercises a judicial discretion. (*Mikrut v. Mikrut*, 113 Ill.App.2d 446, 251 N.E.2d 84; *Marcus v. Marcus*, 109 Ill.App.2d 423, 248 N.E.2d 800; *Fears v. Fears*, 5 Ill.App.3d 610, 283 N.E.2d 709.) There is persuasive reasoning in the language of *King v. King*, 25 Wis.2d 550, 131 N.W.2d 357, that where custody is awarded upon the stipulation of the parties and the court receives no evidence upon the best interests of the child or children, the court does not, in fact, exercise judicial discretion in awarding custody and that the rule that a custody order is subject to modification only if there is a substantial change of condition affecting the child's welfare does not apply. See *Harms v. Harms*, 323 Ill.App. 154, 55 N.E.2d 301.

In such sense, this case differs from *Girolamo v. Girolamo*, 5 Ill.App.3d 627, 283 N.E.2d 713, where the mother testified that it was for the best interests of the child at the time of the decree that custody be placed with the father.

■■ Upon the matters in this record, we conclude that there is, in fact, such change of condition as would subject the custody order to modification. The father testified in these proceedings that it was to the best interests of each of the boys that they be raised together. The record is clear that the father's exercise of visitation has been limited by his inability or his disinclination to overcome the inconveniences incident to the arrangement. As one result, the view of the court expressed in the original decree that the boys should spend as much time together as possible has been substantially diminished. On the other hand, the wife has substantially exercised her visitation rights.

The father argues that the evidence does not show that Shawn, in his custody, has been adversely affected by his failure to exercise visitation with Ryan. The argument is not persuasive in the light of the father's testimony as to the best interests of the boys that they be together. It is said that it is usually desirable that strong family ties be encouraged between children. *Mikrut v. Mikrut*, 113 Ill.App.2d 446, 251 N.E.2d 84.

In *Windhorn v. Windhorn*, 131 Ill.App.2d 785, 264 N.E.2d 531, it is said that re-marriage of a parent is not enough alone to support a change of custody. That opinion affirmed a change of custody to the mother

where her then husband demonstrated an interest and affection for the child and it appears that such change was for the best interests of the child. In *Girolamo v. Girolamo*, 5 Ill.App.3d 627, 283 N.E.2d 713 and *Peraza v. Tovar*, (1957), 13 Ill.App.2d 405, 142 N.E.2d 165, there was affirmative evidence that a newly acquired wife welcomed the child into her household. Here no such affirmative evidence appears in this record, either as to the older son, Shawn, in the custody of the father, or as to the younger son, Ryan, who would be in the home for the substantial periods of visitation contemplated in the original decree. See *Clark v. Clark*, 1 Ill.App.3d 69, 273 N.E.2d 26.

The order of the trial court granting the petition to change the custody of Shawn from the father to the mother should not be disturbed unless the trial court abused its discretion, or unless the order is contrary to the manifest weight of the evidence. The evidence supports the conclusion that it was in the best interests of these children that they be reared together as members of one family unit. The welfare and real interest of the children takes precedence over the interest or claims of the parties. *Walter v. Walter*, 61 Ill.App.2d 476, 209 N.E.2d 691.

The judgment below is affirmed.

Affirmed.

CRAVEN, P. J., and SMITH, J., concur.